[No. 45197. En Banc. November 30, 1978.]

ESTATE OF SAMUEL A. RYDER, *Appellant,* v. KELLY–SPRINGFIELD TIRE COMPANY, *Defendant,* ALUMINUM COMPANY OF AMERICA, *Respondent.*

*Duane Lansverk* and *Landerholm, Memovich, Lansverk, Whitesides, Marsh, Morse & Wilkinson, Inc., P.S. (Allen T. Murphy,* of counsel), for appellant.

*William M. Bauer* and *Detels, Draper & Marinkovich,* for respondent.

HICKS, J.—In this product liability case, certified here by the Court of Appeals, judgment for defendants, Aluminum Company of America (Alcoa) and Kelly–Springfield Tire Company, was entered on a jury verdict following a 12–day trial. Appellant Ryder defines the issue on appeal to be the applicability of the concept of foreseeability in a product strict liability case and she assigns as error the instruction of the jury by the trial court. No other complaint is made concerning the conduct of the trial. We conclude that the trial court's instructions, though not ultimate models for a case of this nature, did permit appellant to argue adequately her theories of the case to the jury, and we affirm.

Samuel A. Ryder was killed September 28, 1973, when the tractor–trailer he was driving left the highway, went down an embankment and overturned in the Columbia River. When the wreckage was recovered, the right front wheel (manufactured by Alcoa in 1955) was broken, and the tire thereon (manufactured by Kelly–Springfield) was flat. The wheel failed as a result of the progression of fatigue cracks which had started under the tire in the gutter area beneath a removable flange. Appellant Ryder, as personal representative of the estate of the deceased, brought this product strict liability action against the manufacturers of both the wheel and the tire. Ryder alleged that the wheel was defective because (1) it was defectively designed and/or (2) Alcoa failed to warn adequately of potential danger from its use.

The trial occupied 12 days and involved about a dozen expert witnesses, additional lay witnesses and more than 100 exhibits. The jury returned a verdict for both defendant manufacturers and judgment was entered accordingly. Appeal is taken only from the judgment in favor of Alcoa.

An examination of the record reveals substantial evidence from which the jury might have found for either party. The issue for our determination is whether the jury

was adequately instructed. It is, of course, the jury's province under the guidance of the court's instructions to evaluate the evidence.

Ryder contends the trial court erred in giving its instruction No. 15 and in refusing to give an instruction she proposed. Ryder argues that the alleged errors (1) confined the case to the issue of warning and excluded the issue of design defect; and (2) converted the case from one of strict liability in tort to one of negligence.

■ The cognizance we take on appeal of alleged erroneous instruction in the trial court depends upon the action appellant took in that court. The trial court must have been sufficiently apprised of any alleged error to have been afforded an opportunity to correct the matter if that was necessary. CR 51(f). In *Nelson v. Mueller*, 85 Wn.2d 234, 238, 533 P.2d 383 (1975), we quoted from *Roumel v. Fude*, 62 Wn.2d 397, 399–400, 383 P.2d 283 (1963), as follows:

> Our rules require that exceptions to instructions shall specify the paragraphs or particular parts of the charge excepted to and shall be sufficiently specific to apprise the trial judge of the *points of law* or question of fact in dispute. The purpose is *to enable the trial court to correct any mistakes in the instructions in time to prevent the unnecessary expense of a second trial.*

Where such exception is not taken, the alleged error will not be considered on appeal. *Nelson v. Mueller, supra.* Instruction No. 15 given by the trial court stated:

> When a maker knows or has reason to know that a particular danger exists, then it has a duty to warn of that particular danger. However, there is no duty to warn where the danger is obvious, where the plaintiff knew of the danger or where others who were in a position to exercise their knowledge knew of the danger.
>
> If you find that either defendant had a duty to warn, then you must find that any warnings provided by that defendant were insufficient or inadequate to provide warning to the user before you can find that defendant liable to the plaintiff.

Ryder's sole challenge to this instruction at trial was that the second paragraph was an erroneous formula instruction. She contended that paragraph could mislead the jury to believe that the only way it could find Alcoa liable was on the warning claim, thereby precluding its consideration of the claimed design defect. For that reason, Ryder asked only that the second paragraph be deleted. No challenge was made to the first paragraph which limits the manufacturer's duty to warn to those situations where the manufacturer knows or has reason to know of a particular danger.[1]

■ An erroneous formula instruction has been said to be one that purports to contain all the elements necessary for a verdict for either party, but which neither includes all such elements nor refers to other instructions which do. *Donner v. Donner,* 46 Wn.2d 130, 278 P.2d 780 (1955). While the second paragraph of instruction No. 15 does contain the words "[i]f you find . . . then you must . . . before you can find that defendant liable", typical of language often found in formula instructions, the paragraph is strictly confined to the subject of warning. The instruction does not purport to summarize all of the issues of the case for the jury. Read in context with other instructions which presented the design defect theory,[2] the contested paragraph is limited to the duty to warn of a product's dangerous propensities. Since instruction No. 15 does not purport to contain all elements necessary for a jury verdict, we hold that it is not a formula instruction as discussed in *Donner,* and is not erroneous in that respect.

■■ Further, we note that had the second paragraph of instruction No. 15 been deleted, as Ryder suggested, the jury would not have been instructed to consider whether

---

[1] Ryder did question the use of a couple of words in the first paragraph. That challenge was not renewed after the court changed the words questioned.

[2] The court's instructions Nos. 12, 13 and 14 provide:

"12. Defendant Aluminum Company of America is liable to plaintiff if she establishes by a preponderance of the evidence each of the following propositions:

warnings actually given were adequate or whether the dangers were so obvious that no warning was necessary. These are questions for the trier of fact in a failure–to–warn case. *Haysom v. Coleman Lantern Co.,* 89 Wn.2d 474, 573 P.2d 785 (1978). Since there is substantial evidence in the record regarding both questions, and since each party is entitled to have his theory of the case presented to the jury, it would have been error for the court to delete the paragraph. *Hester v. Watson,* 74 Wn.2d 924, 448 P.2d 320 (1968).

The alleged error, however, argued most vigorously on appeal by Ryder, was the refusal of the trial court to give her proposed instruction as follows:

The law imputes to the maker of a product knowledge of the harmful character of the product whether the

"1. That the wheel was defective and/or was not reasonably safe for its contemplated use during its contemplated life when it left Aluminum Company of America's control. This means that the wheel must have been defective and/or unsafe to an extent beyond that which would be reasonably contemplated by the ordinary user with the ordinary knowledge common to the community as to the wheel's characteristics;

"2. That as a proximate result thereof the wheel failed;

"3. That the failure of the wheel was a proximate cause of the death of Sam Ryder.

"13. The words 'not reasonably safe for its contemplated use' as used in the previous instructions, refer not only to the condition of the product itself, but may include as well failure to give directions or warnings as to the use of the product in order to prevent it from being not *un*reasonably safe for its contemplated use. If directions or warnings as to the use of a particular product are reasonably required in order to prevent the use of such product from becoming not reasonably safe, the failure to give such warnings or directions, if any, renders the product not reasonably safe for its contemplated use as those words are used in these instructions.

"14. In determining the reasonable expectations of the 'ordinary user' of a product, you may consider the following factors:

"1. The usefulness and the utility of the design.

"2. The likelihood, if any, that the design would cause injury, and if so, the probable seriousness of the injury.

"3. The availability of a substitute design which would meet the same need and which would lessen the likelihood, if any, of injury.

"4. The ability to eliminate any unsafe aspects of the design without impairing its usefulness, or making it too expensive or otherwise impairing its utility.

"In determining this question, you should consider all of the evidence worthy of belief bearing upon any one or more of the factors. You should not single out any one factor to the exclusion of the others."

maker actually knows of it or not. The maker is presumed to know of the harmful characteristics of that which it makes. Therefore, a product is not reasonably safe for its contemplated use if it is so harmful to persons that a reasonably prudent maker with this knowledge would not have placed it on the market.

On appeal, Ryder asserts the court's failure to give this instruction[3] allowed Alcoa to argue that it should not be liable because it had no reason to foresee this particular type of wheel failure. Ryder contends that by allowing that argument to be made, the court's failure to instruct, in effect, converted the action from one of strict liability to one of ordinary negligence.

■ We do not agree that the trial court erred in rejecting the proposed instruction. This state's test for product defect as set forth in *Seattle–First Nat'l Bank v. Tabert,* 86 Wn.2d 145, 542 P.2d 774 (1975), is a buyer–oriented standard based on the reasonable expectations of an ordinary user. Under that test, a product is not reasonably safe, and therefore, is defective where it is unsafe to an extent beyond that which would be reasonably contemplated by an ordinary consumer. While *Tabert* discussed the test in a defective design case, the standard would be the same where the product is claimed to be defective because of a failure to warn. *See Teagle v. Fischer & Porter Co.,* 89 Wn.2d 149, 155, 570 P.2d 438 (1977).

We adopted our standard, which corresponds with that suggested by the drafters of Restatement (Second) of Torts § 402A comment *i* (1965), after reviewing a "potpourri" of theories and authorities. *Tabert,* at 154. Among the authorities and theories reviewed was *Phillips v. Kimwood Mach. Co.,* 269 Ore. 485, 492, 525 P.2d 1033 (1974), and the seller–oriented standard it adopted. As we recognized in *Tabert,* at page 153, Oregon defined the test as follows:

> A dangerously defective article would be one which a reasonable person would not put into the stream of

---

[3]This instruction was approved by the Oregon Supreme Court in *Phillips v. Kimwood Mach. Co.,* 269 Ore. 485, 501 n.16, 525 P.2d 1033 (1974).

commerce *if he had knowledge of its harmful charac-ter.* The test, therefore, is whether the seller would be negligent if he sold the article *knowing of the risk involved.* Strict liability imposes what amounts to con-structive knowledge of the condition of the product.

This test and the standard used in Washington may be but two sides of the same coin. As the Oregon court said in *Phillips,* at page 493:

> To elucidate this point further, we feel that the two standards are the same because a seller acting reasonably would be selling the same product which a reasonable consumer believes he is purchasing. That is to say, a manufacturer who would be negligent in marketing a given product, considering its risks, would necessarily be marketing a product which fell below the reasonable expectations of consumers who purchase it.

While Oregon's test and ours should produce similar results, their focus is quite different. Under the seller–ori-ented standard, as in the negligence analysis, the focus is on the actions of the seller. This general approach is said to have been selected because it "preserves the use of familiar terms and thought processes with which courts, lawyers, and jurors customarily deal." *Phillips,* at 493.

Under the Washington buyer–oriented approach, how-ever, the focus is on the buyer's expectations. The jury does not evaluate the seller's actions. It only determines whether the product is dangerous to an extent beyond that which would be contemplated by the ordinary consumer. As we stated in *Tabert,* at page 154:

> This evaluation of the product in terms of the reasonable expectations of the ordinary consumer allows the trier of the fact to take into account the intrinsic nature of the product. The purchaser of a Volkswagen cannot reason-ably expect the same degree of safety as would the buyer of the much more expensive Cadillac. It must be borne in mind that we are dealing with a relative, not an absolute concept.
>
> In determining the reasonable expectations of the ordinary consumer, a number of factors must be consid-ered. The relative cost of the product, the gravity of the

potential harm from the claimed defect and the cost and feasibility of eliminating or minimizing the risk may be relevant in a particular case. In other instances the nature of the product or the nature of the claimed defect may make other factors relevant to the issue.

The instruction Ryder proposed was unacceptable in that it set forth a test which we have not adopted in this state. The standard which the court submitted to the jury in its instruction No. 12, we perceive to have been based on *Seattle–First Nat'l Bank v. Tabert, supra.* By also submitting a standard with a focus totally different from that set forth in unchallenged instruction No. 12, the trial court would have introduced an unnecessary element of confusion into the jury's deliberation. Moreover, the proposed instruction, by imputing knowledge to the manufacturer, would have been inconsistent with the first paragraph of instruction No. 15 to which no exception was taken. That paragraph advised the jury that a maker has a duty to warn only where it knows or should know of the potential for harm.[4]

If Ryder was concerned with preventing Alcoa from arguing foreseeability, she could have proposed a limiting instruction which addressed that problem without also incorporating the seller–oriented test. She did not. The trial court did not err in rejecting the instruction which was offered.

It was the jury's province to determine from the conflicting evidence whether Alcoa's design of this particular wheel was unreasonably dangerous in the light of an ordinary consumer's reasonable expectations, just as it was within the jury's province to decide whether warnings were required and whether the warnings that were given were adequate. We have carefully examined the record furnished to us and we find the trial to have been conducted patiently and fairly. Under the instructions of the court, Ryder had

---

[4]The first paragraph of instruction No. 15 reads in part:

"When a maker knows or has reason to know that a particular danger exists, then it has a duty to warn of that particular danger."

ample opportunity to argue all phases of her theories of product liability as she had presented them in this case. There were 12 days of trial with over 100 exhibits and many expert and lay witnesses offering testimony for evaluation. Apparently, the jury simply was not persuaded that the wheel design was defective or the warnings and instructions inadequate.

Affirmed.

WRIGHT, C.J., and HAMILTON, STAFFORD, UTTER, BRACHTENBACH, HOROWITZ, and DOLLIVER, JJ., concur.

ROSELLINI, J., concurs in the result.