Austin M. **WOOD**, Plaintiff-Appellee,

v.

**STIHL, INC.,** a foreign corporation, Defendant-Appellant.

No. 81–3177.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Sept. 7, 1982.

Decided May 9, 1983.

**1102**

Paul C. Gibbs, Williams, Lanza, Kastner & Gibbs, Seattle, Wash., for defendant-appellant.

H. Frank Stubbs, Inc., P.S. Tacoma, Wash., for plaintiff-appellee.

Before BROWNING, TUTTLE,* and REINHARDT, Circuit Judges.

TUTTLE, Circuit Judge:

This is an appeal by the defendant manufacturer of the Stihl 045AV chain saw from a judgment against it for an injury to the hand and leg of the plaintiff in a diversity products liability case.

The main issues raised by the appellant are:

(1) Did the trial court err in refusing to accept the qualifications of the independent expert witnesses offered by Stihl?

* Honorable Elbert P. Tuttle, Senior Circuit Judge, United States Court of Appeals for the Eleventh Circuit, sitting by designation.

(2) Did the trial court err in refusing to admit Stihl's evidence that the chain saw was reasonably safe?

(3) Did the trial court err in excluding evidence offered by Stihl to disprove the plaintiff's claim that the condition of the saw was the proximate cause of the injury?

(4) Did the trial court err in refusing to admit evidence of the factual circumstances surrounding the accident?

(5) Did the trial court abuse its discretion in refusing to permit impeachment of Wood's expert witness Larson?

(6) Did the trial court err in instructing the jury?

## I. STATEMENT OF THE CASE

### A. *Proceedings Below*

Wood alleged that the Stihl 045AV saw supplied him was defective in design and that the defect was the proximate cause of his injuries. He claimed that the saw was not reasonably safe because it did not have a chain brake. A chain brake is a device designed to stop the chain from turning in certain kickback situations. It is activated by the operator's hand striking the handguard as the saw is thrown back on its axis towards the operator. Stihl had made a chain brake available as an option on the 045AV, but Weyerhaeuser had not specified that option. Wood claimed that had the saw been equipped with the chain brake, he would not have been injured when he lost control of the saw.

Stihl denied that the saw was defectively designed, and contended that without the optional chain brake it was reasonably safe. Stihl furthermore asserted that a chain brake, if made standard equipment on all saws used by professional cutters, would impair the versatility of the product and create potential hazards for loggers in the northwest timber region where the accident occurred, thus contending that a chain brake was properly provided only as an optional item. Plaintiff Stihl contended also that even had the saw been equipped with the chain brake, Wood's injury still

would have occurred. In other words, it argued that with such a brake the way this accident occurred, the brake would not have been activated and therefore the want of a brake could not be the proximate cause of the injury. Stihl also pled assumption of risk and misuse, claiming that the sole proximate cause of the accident was the conduct of Wood in making the cut.

The case was tried to a jury between March 9 and March 11, 1981 and resulted in a jury's verdict and judgment in favor of Wood for $300,000.

### B. *Statement of Facts*

We restate the facts as contained in the brief of the appellant, because, with one modification which we shall add at the end of the statement of facts, the appellee does not take issue with the appellant's statement.

#### 1. *Background of the Defendant and the Product*

Defendant Stihl, Inc. is a Delaware corporation whose principal place of business is Virginia Beach, Virginia. It is a wholly owned subsidiary of Andreas Stihl, a partnership operated under the laws of the Federal Republic of Germany. Andreas Stihl sells its products in more than 130 countries around the world.

At the time of the accident, Wood's saw had a Stihl 045AV powerhead, an Oregon 32-inch bar, and an Oregon 404 chisel chain. The bar and chain were neither manufactured nor sold by Stihl. The Stihl 045AV is a large saw used by professional loggers. Wood's powerhead had been manufactured by Andreas Stihl in 1977 and exported to the United States by Stihl, Inc. It was sold to the Weyerhaeuser Company, Wood's employer, through the Stihl, Inc. distribution system.

The chain brake, first available as an option on the 045AV in 1976, could either be manufactured on the powerhead at the factory or purchased and put on later.

In his statement of facts, plaintiff stated only:

Plaintiff adds to the defendant's statement of the facts that the only evidence in the case concerning the way plaintiff was holding the saw, his left hand on the throttle and his right hand on the front guard on the top of the saw, was that he was.

## II. DISCUSSION OF ISSUES

### A. *Qualifications of Defendant's Experts*

This Court has held, with respect to the standard of review of a finding by a trial court that a tendered expert witness is not qualified:

> The trial court is vested with broad discretion concerning the admissibility or exclusion of expert testimony and the court's action is to be sustained unless shown to be manifestly erroneous (citations omitted).

*United States v. An Article of Drug,* 661 F.2d 742, 745 (9th Cir.1981).

The Federal Rules of Evidence clearly indicate the desirability of opinion evidence in a proper case if such evidence "will assist the trier of fact to understand the evidence."

> Rule 702—*Testimony by Experts*—If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise.

F.R.Evid. Rule 702.

That the jury in this case could be assisted in its understanding of the evidence "or to determine a fact in issue" by hearing expert testimony is most clearly evidenced by the fact that the plaintiff's case was dependent entirely upon such an expert. It cannot be gainsaid that whether or not this particular saw was as safe as it could be made within reason was a question that could be resolved only by a factfinder after being told of the opinion of persons who had carefully studied the timbering industry, the use of such saws, their use under different situations, the structure of the saw and possible modifications that, in the opinion of experts, might or might not add to safety in its use. There is no doubt that if the trial court had admitted the testimony of the experts Dent and Brooks, the appellant could not have successfully appealed from its admission here. The only question, therefore, is whether the rejection of the testimony of these witnesses on the ground of lack of qualification can be reversed because such a rejection was "manifestly erroneous."

We deal first with the expert Dent. To begin, we rely largely upon appellant's statement as to Dent's testimony, because each of the statements has been supported by a record reference which we have carefully checked and the appellee takes no issue with this statement of facts. Dent's testimony amounted to a running colloquy between counsel, the witness, the court and plaintiff's counsel, during which the court sustained many objections offered by the plaintiff as to the *relevancy* of the opinions given by Dent. Not until the 15th page of Dent's testimony did the plaintiff's counsel ever challenge Dent's qualifications. Most of the objections sustained were on the ground of relevance. These were clearly decided incorrectly by the trial court. Since this testimony went either to establish Dent's qualifications as an expert or to his opinion as to whether there had been a kickback of the saw or as to the safety of the saw without a chain brake, it was clearly relevant. When the first challenge to Dent's qualifications was made counsel objected to the question: "Do you have an opinion as to whether or not the accident involving Mr. Wood on March 12, 1979 was a kickback accident?" Counsel stated: "I will object, I don't think he is qualified as a kickback expert." Thereafter, objections were sustained to various questions asked of Dent either on the ground that they were irrelevant or that "he has not been qualified as an expert in chain brakes."

Now as to Dent's qualifications. Dent spent 80–90 percent of his time as a profes-

sional logger.[1] He has been an investigator of logging accidents for other logging companies and insurance companies "many times." He produced 10 training films explaining safe, correct, and efficient logging work practices. He published a book on professional timber practices in 1974 which is widely used around the world. One exhibit lists hundreds of companies in various countries that have used his books. He also has written articles in industry journals and magazines and given lectures about professional logging and logging equipment. As the result of his consulting work and travels, Dent is familiar with logging practices around the world. He has tested chain brakes and has discussed chain brakes with both loggers and their employers. He has broad experience in the Pacific northwest with various types of chain saws, including the Stihl 045AV with and without a chain brake. Other courts around the country have qualified Dent as an expert.

Dent testified that he had interviewed the plaintiff Wood extensively and observed photographs of the site of the accident taken immediately following the occurrence, that he had reviewed the testimony of Larson, the plaintiff's expert, and the investigation report made by the Weyerhaeuser Company employees immediately following the accident, the same basis upon which plaintiff's expert Larson had formed his conclusions.

We conclude that under the modern concept of allowing expert testimony, as embodied in the Federal Rules, Dent was fully qualified, and any determination by a trial court to the contrary would be "manifestly erroneous," the standard set by *United States v. An Article of Drug, supra* at 745, a test which was met in *Reynolds Metals Co. v. Lampert,* 324 F.2d 465 (9th Cir. 1963). The court there, without analyzing the standard, cited with approval, *Bratt v. Western Airlines,* 155 F.2d 850 (10th Cir. 1946), in which the court said:

It must be remembered that the court is not the judge of the quality of the evidence, nor does the witness perform the function of a juror—he can only contribute something to the jury's information and if he can, he should be permitted to do so.

*Bratt,* 155 F.2d at 854. *See, also, Mannino v. International Mfg. Co.,* 650 F.2d 846, 851 (6th Cir.1981).

We next take up the matter of the witness Brooks, whose testimony was tendered by deposition. Brooks's qualifications were equally impressive as to his experience and knowledge of chain saws, both with and without brakes as that of Dent. He is a mechanical engineer who worked with chain saws for the McCulloch Corporation for 26 years as a testing engineer, development engineer, development supervisor, and manager of McCulloch's design group. McCulloch is an American manufacturer of chain saws. Brooks is familiar with all aspects of chain saw design and holds five patents concerning power saws. He supervised between 70 and 25 design engineers while at McCulloch and designed three chain brakes. Brooks evaluated the chain brakes of other manufacturers and compared them. He tested both chain saws and chain brakes. He is intimately familiar with the Stihl 045AV and has reviewed the design features of that product. He has traveled to different timber regions around the world and has used chain saws of various types in varying circumstances in these areas. He has practical experience with timbering conditions in the Pacific northwest. He has felled, bucked, and limbed trees.

The trial court did not consider Brooks's qualifications. Instead, it excluded Brooks's testimony by virtue of a local rule 43(j) which provides:

Except as otherwise ordered by the Court, a party shall not be permitted to call more than one expert witness on any subject.

---

1. His testimony was "I am a third generation logger. I have been making a living with the saw for the past 10, 12 years."

After finding Dent not to be qualified as an expert on either design or causation, the court ruled:

THE COURT: You have now used your expert. How many more witnesses do you have Counsel?

MR. PALM: Your Honor, we didn't get to use our expert, you excluded him.

THE COURT: You have made the offer of proof.

MR. PALM: You have ruled, you have rejected the offer—

THE COURT: That is correct.

MR. PALM: —So we will put on another witness with different qualifications, or will you reject the offer no matter what the qualifications are?

THE COURT: You have had one witness, Counsel, that you have offered as an expert—

MR. PALM: But we didn't get to use him.

THE COURT: —And you offered him as an expert on the opinion of whether the saw was safe.

MR. PALM: Right.

THE COURT: You offered him as an expert on what was the proximate cause of the accident. Now whether I have permitted it or not is of no consequence in the procedure—

MR. PALM: We have an expert on design, Your Honor.

THE COURT: Anything that you would offer would then be repetitious and cumulative.

■ Appellant contended that even under rule 43(j), strictly applied, the witnesses Dent and Brooks were offered for two "subjects." One, on the matter of design of a safe product and the other on the issue of causation of the injury to Wood. In any event, we conclude that even if the trial court had not erred in excluding the testimony of Dent, it would be error to have excluded the Brooks's deposition as the only non-party or independent technical expert of the appellant. In any event, we now

hold that it would be error to exclude the testimony of either of these witnesses as not being qualified. The trial court should consider the appropriate application of rule 43(j) upon retrial in light of this determination.

B. *Exclusion of Stihl's Evidence that the Chain Saw was Reasonably Safe*

Stihl called as a witness Weyerhaeuser's area superintendent Gullickson who had investigated Woods's injury. He was asked about tests run on Stihl saws with or without chain brakes, but the court excluded the evidence as irrelevant. Stihl then called Ford Bentley, a Weyerhaeuser cutting foreman who had asked Bentley about tests on the Stihl saw and chain brake. This was also excluded as irrelevant. Stihl then called an engineer for Stihl whom the court acknowledged was representing defendant and was thus a "party." He was not allowed to testify, on the grounds of irrelevance, to the multi-functional uses of the saw, nor was he allowed to state the basis for his opinion that the chain saw without a brake was reasonably safe when used in professional timber cutting.[2]

■ In its offers of proof and discussions with the court, which were severely restricted, Stihl indicated that the testimony of many uses of the saw, its use in the northwest woods and elsewhere and the tests run on the saw were relevant to show that a chain brake would impair the utility of the saw and increase the danger of injury to the operator in some situations in professional timber cutting. The question, thus, is whether such proof would be relevant in a design defect case.

The Washington Supreme Court has held that liability is imposed on a manufacturer or seller if it sells a product which is unsafe to an extent beyond the reasonable expectations of the ordinary consumer. *Ryder v. Kelly-Springfield Tire,* 91 Wash.2d 111, 116, 587 P.2d 160, 163 (1978). In that case, the court held that among the factors to be considered when determining the reasona-

**2.** It is to be noted that the objection to this witness's testimony was not based on his qualifications as an expert. It was based solely on the issue of relevance.

ble expectations of the consumer was "the feasibility of eliminating or minimizing the risk." The court also noted that other factors would be relevant to the issue. In *Seattle-First National Bank v. Tabert,* 86 Wash.2d 145, 154, 542 P.2d 774, 779 (1975), the Washington Supreme Court approved an instruction that required the jury to consider *inter alia:* "the ability to eliminate any unsafe aspects of the design without impairing its usefulness, or making it too expensive or otherwise impairing its utility."

■ It would certainly be equally appropriate to charge the jury that it could consider whether the ability to eliminate any unsafe aspects might depend upon its potential increase of danger to the consumer. *See, also, Connor v. Skagit Corp.,* 30 Wash. App. 725, 638 P.2d 115 (1981).

The exclusion of the proffered evidence by this witness was clear error.

C. *Exclusion of Stihl's Evidence of Factual Circumstances Surrounding the Accident and Expert Opinions Bearing on the Issue of Proximate Cause*

The testimony of both Gullickson and Bentley as to the circumstances surrounding the accident was excluded as irrelevant by the trial court. Gullickson was not permitted to testify to the height of the log, marks on the nearby trees from the log springing up when it broke, or what his examination of the log revealed. Bentley was not permitted to testify to the height of the log immediately after the accident, or what he observed when he investigated the accident scene the following day.

So far as counsel was permitted by the trial court, he attempted to introduce this evidence as preliminary to expert opinions that the absence of a chain brake was not the proximate cause of the injury and that the injury would have occurred even if the saw had been equipped with a chain brake. The excluded Bentley testimony was to the effect that the tree had a great deal of spring energy. It was bowed. Wood had testified that he first cut it from the bottom and the log showed that the cut was about

two-thirds through the tree, Wood then attacked the log from the top, cutting down towards the lower cut. Brooks opined that:

as the saw cut down to the level of the end of the lower cut, then the tree split between the two cuts. There was a ledge left by the misalignment of the cut. The bottom of the tree sprung upwards. The top of the tree fell to the ground. O.K. Well, the bottom of the tree had control of the saw and threw it into the air and as I have indicated, the log weighed thousands of pounds, tons, and had a great deal of energy, certainly more than any man could hold so the saw was thrown into the air and it fell on the operator.

■ Clearly, the testimony of the witnesses who had been at the site as to the height of the log, its position lodged between other trees, and as to the cut in the log relative to the position where Wood had said he was standing, was not excludable on the ground of irrelevance. If objected to because it had not been shown that on the day following the accident there had been no changes before the photographs were taken and the Weyerhaeuser investigation had begun, which was not raised by plaintiff's counsel, appellant would have had an opportunity to determine whether it could establish this proof. Instead, the court excluded it, so far as can be determined from this record, on the ground of irrelevance or possibly because the court thought that "no expert could unravel the question as to how the saw was taken out of Wood's hand." The court asked this question: "Who can ever recreate how that tree took that saw out of his hand?" Of course, that is the question for whose resolution both parties' depended on a qualified expert. An expert viewing the scene and being experienced in the dynamics of timber sawing of large fallen logs was certainly a proper witness who might express his opinion as to what actually happened when the bowed log broke in two. We agree with the Court of Appeals for the Seventh Circuit which has said:

Experts frequently must determine the causes of accidents by drawing inferences

after the event from such evidence as is available. Frequently circumstances make it impossible to state all the details of the occurrence with absolute certainty. It is enough that the expert opinion be supported by a rational explanation which reasonable men could accept as more probably correct than not correct. *Nanda v. Ford Motor Co.,* 509 F.2d 213, 221 (7th Cir.1974).

It was error therefore for the trial court to exclude the evidence of the circumstances surrounding the time and place of the accident.

### D. *Exclusion of Evidence Rebutting Proximate Cause*

The errors of the trial court excluding evidence on grounds of relevance may largely have been due to its belief that the defendant in a products liability suit could not, under Washington law, undertake to prove that the absence of a security device or any defect in the subject equipment was not the proximate cause of the injury until after proof by such defendant of its affirmative defense either of assumption of risk or misuse of the article. The court stated:

> Well, I am just telling you before Mr. Brooks can testify as to proximate cause, there must be a showing that there was some assumption of the risk by the plaintiff.

The colloquy relating to this issue was as follows:

> MR. PALM: ... As Your Honor indicated in the conference last week, the plaintiff has the burden of proving proximate cause—
>
> THE COURT: There is no question about it.
>
> *   *   *   *   *   *
>
> THE COURT: ... If the defendant rested right now, it is still a question of fact for the jury whether they proved it or not.
>
> THE COURT: But you were going one step further, you were trying to disprove it, proximate cause.
>
> *   *   *   *   *   *

THE COURT: Yes, under the rules of product liability of this state—

> *   *   *   *   *   *

> THE COURT: —and one of those—there are only two defenses, I didn't limit you, the courts of the State of Washington has limited you, there are two affirmative defenses, one is either misuse, and I don't see any, and two, assumption of the risk. And then only then does proximate cause come in.
>
> MR. PALM: Oh no, that is where we are in disagreement, and I am sure you will give us the opportunity—
>
> THE COURT: Well that is what the Ninth Circuit is there for.

As conceded by the trial court, there is no doubt that the plaintiff in such a case as this, has the burden of proving that the defect in the product was a proximate cause of the plaintiff's injury. *Lamon v. McDonnell Douglas Corp.,* 19 Wash.App. 515, 521, 576 P.2d 426, 430 (1978), *aff'd* 91 Wash.2d 345, 588 P.2d 1346 (1979).

Stihl's theory of the case was that the saw was thrown up in the air by the tree when it broke, and that the saw did not kick back in a manner which would have tripped the chain brake by the operator's hand going forward against the guard if the saw had had one. It would have been Brooks's testimony had he been permitted to testify that the accident was a "throw out" accident and not a kickback. Brooks's opinion was that the tree was bowed, and when it snapped, one end sprang up and a lip extending from the cut surface pulled the saw out of Wood's hand and tossed it in the air. He did not believe the trajectory of the saw would cause Wood's hand to hit the handguard if there had been one and activate the chain brake.

Since the plaintiff carries the burden of proving proximate cause of the plaintiff's injury, it is of course open to the defendant to disprove proximate cause without the necessity of carrying the burden of proving either of the two available affirmative defenses. The trial court therefore erred in its ruling as to the relevancy of this evidence.

E. *Exclusion of Evidence of Plaintiff's Conduct Relevant to the Issues of Misuse, Sole Proximate Cause and Assumption of Risk*

■ We conclude that the trial court did not err in excluding evidence of plaintiff's conduct relevant to these issues. In light of the record as we understand it, there was insufficient proof to raise a fact issue as to any one of these three affirmative defenses.

F. *Action of Trial Court in Limiting Appellant's Impeachment of Plaintiff's Expert Witness*

■ While probably not reversible error standing alone, partially because it is not clear from the record that the proper proffer of proof was made by the appellant, since the case must be remanded for a new trial, we consider it appropriate to call attention to what appears to be a further error of the trial court. In cross examining Larson, the plaintiff's expert witness, defense counsel sought to impeach him by use of a prior inconsistent statement in the form of a deposition. In such a situation, which is provided for under Fed.R.Evid. 613, this court has held that: "To satisfy the foundation requirement for introduction of an alleged statement for impeachment, the cross-examiner should ask the witness whether he made the statement, giving its substance, naming the time, the place, and person to whom made." *United States v. Hibler,* 463 F.2d 455, 461 (9th Cir.1972) (*quoting Robertson v. M/S Sanyo Maru,* 374 F.2d 463, 465 (5th Cir.1967); *see Mattox v. United States,* 156 U.S. 237, 245–46, 15 S.Ct. 337, 340–341, 39 L.Ed. 409 (1895). This is precisely what counsel undertook to do with respect to the witness Larson. The trial court refused to permit the witness to be questioned as to what he had stated during the taking of the deposition because, as the court stated, it would first be necessary for counsel to ask the witness whether the statement he had previously made was inconsistent with evidence he had now delivered in the current trial. We are unable to find any basis for such a ruling and conclude therefore that it was error for the trial court to refuse to permit the defendant to question the witness as to his prior statement in the deposition.

G. *Jury Instructions*

■ In light of the fact that we are remanding the case to the trial court for a new trial at which the issues will be different than those presented to the jury originally, we do not now pass upon the instructions given to the jury other than instruction 11 which stated that the product itself must be labeled with a warning. In the first place, the Washington Supreme'Court has held that warnings are not necessary in the case of obvious or known dangers. *Haysom v. Coleman Lantern Co.,* 89 Wash.2d 474, 480, 573 P.2d 785, 789 (1978); *Little v. PPG Industries, Inc.,* 92 Wash.2d 118, 123, 594 P.2d 911, 914 n. 1 (1979). Moreover, in *Reed v. Pennwalt Corp.,* 22 Wash.App. 718, 724, 591 P.2d 478, 482 (1979), the court recognized that where the buyer is a large industrial concern with its own safety programs and method of product distribution, communicating warning to the buyer *may* be sufficient to relieve the seller of liability to buyers' employees for failure to warn. Under this principle of law, the court erred in excluding evidence offered by the defendant regarding warnings given to Weyerhaeuser and given by Weyerhaeuser to its employees. As to the question whether Wood could have been charged with knowledge of the danger, it must be remembered that Wood testified that he had been involved in a kickback accident prior to March 12, 1979 and from this the jury may have inferred that he knew of the danger.

III. CONCLUSION

It is clear that substantial important evidence was kept from the jury's consideration, partially because of the incorrect holdings of the trial court as to the qualifications required of an expert witness and partially because a misunderstanding by the trial court of the burden of the plaintiff to prove proximate cause, carrying with it the

right of the defendant to attempt to disprove that element of the plaintiff's case without first having to establish an affirmative defense.

The judgment is REVERSED and the case REMANDED for further proceedings not inconsistent with this opinion.