IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION THREE

| | | |
|---|---|---|
| STATE OF WASHINGTON, | ) | No. 33247-1-III |
| Respondent, | ) | |
| v. | ) | |
| SHANE KYLE DEWEBER, | ) | UNPUBLISHED OPINION |
| Appellant. | ) | |

SIDDOWAY, J. — Following a jury trial, Shane Deweber was convicted of two counts of second degree assault and one count of attempting to elude a pursuing police vehicle. He contends his right to a jury trial was violated when the trial judge imposed an exceptional aggravated sentence that was not supported by a factual finding by the jury, and the trial court erred when it denied his request for a jury instruction on third degree assault. We affirm the convictions, but because the court committed *Blakely*[1] error, we vacate the exceptional sentence and remand for resentencing.

FACTS AND PROCEDURAL BACKGROUND

After Mr. Deweber separated from his wife he became depressed and suicidal. On October 7, 2013, he learned his wife had started seeing someone else. Distraught, he purchased beer and began drinking. After an upsetting phone call with his wife, Mr.

---

[1] *Blakely v. Washington*, 542 U.S. 296, 303, 124 S. Ct. 2531, 159 L. Ed. 2d 403 (2004).

Deweber consumed hundreds of Adderall[2] pills along with more beer. While he claims no memory of the following events, he admits he wanted to commit suicide that night.

Between 11:06 and 11:35 p.m., Mr. Deweber sent text messages to his mother, two of which stated:

> "I took around 250 Adderall and 10 beers. This should finally do it—this should finally do. I love you, mom, and don't worry, I'm at peace with it."
> . . . .
> . . . "Please don't call the law because I'll go after them with an ax and they'll have to shoot me."

Report of Proceedings (RP)[3] at 267.

Several hours later, Mr. Deweber drove his pickup truck to the recreational vehicle (RV) where his wife was living and started banging on her RV, telling her he "just wanted to talk." RP at 394. Ms. Deweber later testified that her husband was not himself, was "twitching and jerking," was running his hands up and down the RV, and at one point, started licking the RV's windows. RP at 393. She called police.

Deputies Jerrad Jech and Michael Ramos were the first to respond to her call. Upon arriving, they got out of their vehicle and Mr. Deweber came toward them,

---

[2] Adderall is a medication used to treat attention-deficit/hyperactivity disorder (ADHD). *See* http://www.fda.gov/Drugs/DrugSafety /PostmarketDrugSafetyInformationforPatientsandProviders/ucm111441.htm (last visited February 9, 2017).

[3] All references to the report of proceedings are to the four volume report that begins with a status hearing on August 7, 2014, and continues through trial and the return of the jury's verdict.

behaving strangely. Deputy Jech ordered Mr. Deweber to show his hands, which he failed to do. Instead, he reached inside the nearby passenger side door of his pickup truck and pulled out what Deputy Jech would later describe as a Samurai sword, which Mr. Deweber swung up over his head, sending its sheath flying. He took a couple of steps towards the officers with the sword raised and tried to coax them into shooting him. A standoff ensued as Deputies Jech and Ramos waited for additional officers to respond so they would be better able to subdue Mr. Deweber.

Mr. Deweber then began to back off and the two deputies repositioned. At that point, Mr. Deweber suddenly ran around to the driver's side of his truck, got in, managed to navigate around their vehicle and a second police vehicle that was arriving, and drove away.

Officers followed Mr. Deweber but terminated the chase when it became a danger to the public. Mr. Deweber, traveling at high speed, had turned off his vehicle lights and was traveling mostly, and seemingly intentionally, in oncoming lanes of traffic.

Thinking Mr. Deweber might return to his wife's RV, Supervising Patrol Sergeant Mathew Clarke and Kennewick Police Officer Elizabeth Grant traveled to the vicinity of Ms. Deweber's RV and positioned themselves along the route they expected Mr. Deweber to follow if he returned. They pulled off the highway onto a gravel cut out. One patrol car was parked behind the other, and overhead lights were illuminated on both.

3

Mr. Deweber did return just as Sergeant Clarke was getting his spike strips undone and ready to deploy. As Mr. Deweber's pickup truck approached, the officers heard it revving and accelerating. Realizing that "something wasn't right," Sergeant Clarke told Officer Grant to run, and both fled from their vehicles. RP at 185. This proved prudent, since Mr. Deweber swerved toward and drove into the police vehicles at high speed, causing one to flip over and land on top of the other. To the astonishment of Sergeant Clarke and Officer Grant, who expected Mr. Deweber to be badly injured, he jumped out of the passenger side window of his truck and although bloodied, ran toward them, screaming, "[J]ust fucking shoot me." RP at 218. After several taser deployments, officers on the scene were able to immobilize and detain him.

Mr. Deweber was eventually charged with two counts of assault in the first degree and with attempting to elude a pursuing police vehicle. The assault charges included an allegation that he used a deadly weapon—his vehicle[4]—and a special allegation that the victims were members of law enforcement.

---

[4] The Washington Criminal Code, Title 9A RCW, defines "deadly weapon" to include vehicles:

> "Deadly weapon" means any explosive or loaded or unloaded firearm, and shall include any other weapon, device, instrument, article, or substance, including a "vehicle" as defined in this section, which, under the circumstances in which it is used, attempted to be used, or threatened to be used, is readily capable of causing death or substantial bodily harm.

RCW 9A.04.110(6) (2011).

4

At trial, the court instructed the jury on first degree assault and the lesser degree crime of second degree assault, but refused a defense request to instruct the jury on third degree assault. Unlike first and second degree assault, third degree assault does not include any method that involves use of a deadly weapon. As the trial court explained, "[F]or the jury to find the defendant guilty of only Assault in the Third Degree, they would have to find, beyond a reasonable doubt, that the defendant assaults the officers but did not use a deadly weapon. I don't think there is substantive evidence to support that. . . . [I]f in fact he did commit the assault at all, I don't think a jury could find that he committed assault but did not use a deadly weapon." RP at 444.

On the issue of the law enforcement victim aggravator, the jury was instructed that if it found Mr. Deweber guilty of assault in the first or second degree, it "must determine if the following aggravating circumstance exists:

> Whether the crime was committed against a law enforcement officer who was performing his or her official duties at the time of the crime, and the defendant knew the victim was a law enforcement officer.

Clerk's Papers (CP) at 118 (Jury Instruction 22).

Jurors were given special verdict forms to complete with their determination about the law enforcement victim aggravator; both special verdict forms asked, for the respective assault count:

> Was the crime . . . committed against a law enforcement officer who was performing his or her official duties at the time of the offense?

5

CP at 150-51. Thus worded, the special verdict forms omitted the required statutory element that a defendant knows the victim to be a law enforcement officer.

The jury found Mr. Deweber guilty of eluding a police vehicle and of both counts of second degree assault, and answered yes to both law enforcement victim special verdict forms.

At sentencing, defense counsel objected to the imposition of an exceptional sentence based on the law enforcement victim aggravator, arguing that because the special verdict forms framed the question for the jury in terms of some, but not all of the elements of the aggravator (omitting the requirement that Mr. Deweber knew the victims were law enforcement officers) the jury did not find every element of the aggravator. But the trial court was persuaded by the State that the jury instructions correctly stated the elements of the aggravator. It imposed an exceptional sentence of 86 months of confinement. It entered findings that the jury had found (along with other required elements of the aggravator) that "the defendant knew the victims were law enforcement officers," that the jury's special verdict was supported by substantial evidence, and that the standard range for the crimes was clearly too lenient in light of the purposes of the Sentencing Reform Act of 1981, ch. 9.94A RCW. CP at 191. Mr. Deweber appeals.

6

## ANALYSIS

### *Exceptional sentence*

Mr. Deweber contends the trial court imposed an exceptional sentence based on an aggravator all of whose elements were not found by the jury, in violation of his constitutional right to a jury trial.

Under the Sixth Amendment to the United States Constitution, which includes the jury trial guarantee for criminal defendants, any fact "[o]ther than . . . a prior conviction . . . that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt." *Apprendi v. New Jersey*, 530 U.S. 466, 490, 120 S. Ct. 2348, 147 L. Ed. 2d 435 (2000). "[T]he 'statutory maximum' for *Apprendi* purposes is the maximum sentence a judge may impose *solely on the basis of the facts reflected in the jury verdict or admitted by the defendant.*" *Blakely*, 542 U.S. at 303. Washington law, applying article I, sections 21 and 22 of the Washington Constitution, is in accord. *State v. Williams-Walker*, 167 Wn.2d 889, 896, 225 P.3d 913 (2010) (citing *State v. Frazier*, 81 Wn.2d 628, 633, 503 P.2d 1073 (1972)). If a jury "has not found all the facts" the law makes necessary to impose the punishment, a judge exceeds his authority by inflicting a "punishment that the jury's verdict alone does not allow." *Blakely*, 542 U.S. at 304.

As earlier recounted, both special verdict forms addressing the law enforcement aggravator put a straightforward question to the jury:

7

> Was the crime . . . committed against a law enforcement officer who was performing his or her official duties at the time of the offense?

CP at 150-51. As the appellant points out, "[H]ad the special verdict form simply asked the jurors if they found the aggravator, without reference to any of the three findings [that must support the aggravator], then it could be presumed the jury answered the question based on the accurate instructions." Reply Br. at 4.[5] Instead, the verdict form asked for and secured the jury's findings on only two of the three elements. In order to impose the aggravator the trial court had to find, or infer that the jury found, the third element.

The State argues that because the jury's instruction 22 identified all elements of the aggravator whose existence (or not) the jury was asked to determine, the trial court could legitimately infer that in answering "yes" to the special verdict forms, the jury found all the elements included in the instruction—not just the incomplete elements included in the verdict forms. To begin with, the trial court could not draw that inference. The jury was given 22 instructions, which covered 28 pages. It was asked to complete only 6, single page verdict forms, each of which posed straightforward

---

[5] Here and elsewhere, Mr. Deweber's briefing belies the dissent's "straw man" argument that Mr. Deweber contends special verdict forms must recite the elements of an offense or aggravator. In Mr. Deweber's opening brief, he pointed out that in the trial court, the State mischaracterized his position in this fashion, "fail[ing] to address the issue raised by Mr. Deweber." Br. of Appellant at 11-12. Mr. Deweber contends only that if the court *chooses* to frame the question in a special verdict form by asking about elements, it must ask about all the elements, since the trial court cannot make its own finding on an omitted element or infer a jury finding of that element.

8

questions for jurors to answer. Presumably, they answered the questions posed.

Moreover, the fact that the court was required to draw an inference at all about what the jury had in mind, going beyond the question it was asked, is fatal to the State's defense of the exceptional sentence. In *Williams-Walker*, our Supreme Court held that under a state constitutional analysis, *Blakely* error is never harmless. 167 Wn.2d at 900-02. "Critically, the sentencing judge can know which (if any) enhancement applies only by looking to the jury's special findings." *Id.* at 901-02. The fact that substantial evidence would support a finding that Mr. Deweber knew the victims to be law enforcement officers is irrelevant, because Mr. Deweber has not assigned error to the jury's verdicts but only to the court's imposition of an exceptional sentence that is unsupported by a sufficient jury finding.

The exceptional sentence must be vacated and Mr. Deweber resentenced.

*Refusal to instruct on third degree assault*

Mr. Deweber also contends the trial court erred when it denied his request for an instruction on the lesser degree offense of assault in the third degree. A defendant is entitled to a lesser degree offense instruction if

> (1) the statutes for both the charged offense and the proposed inferior degree offense "proscribe but one offense"; (2) the information charges an offense that is divided into degrees, and the proposed offense is an inferior degree of the charged offense; and (3) there is evidence that the defendant committed only the inferior offense.

9

*State v. Fernandez-Medina*, 141 Wn.2d 448, 454, 6 P.3d 1150 (2000) (quoting *State v. Peterson*, 133 Wn.2d 885, 891, 948 P.2d 381 (1997)). The first two factors are the legal components of the test, while the third factor entails a factual inquiry. *Id.* at 454-55.

Only the factual component of the test for giving a lesser degree instruction was disputed in the trial court. To satisfy the factual component, "the evidence must raise an inference that *only* the lesser included/inferior degree offense was committed to the exclusion of the charged offense." *Id.* at 455. Accordingly, a trial court should give an instruction on a lesser degree offense "'[i]f the evidence would permit a jury to rationally find a defendant guilty of the lesser offense and acquit him of the greater.'" *Id.* at 456 (alteration in original) (quoting *State v. Warden*, 133 Wn.2d 559, 563, 947 P.2d 708 (1997)).

"When determining if the evidence at trial was sufficient to support the giving of an instruction, the appellate court is to view the supporting evidence in the light most favorable to the party that requested the instruction." *Id.* at 455-56. "[T]he evidence must affirmatively establish the defendant's theory of the case—it is not enough that the jury might disbelieve the evidence pointing to guilt." *Id.* at 456.

The method of first degree assault with which Mr. Deweber was charged was that provided by RCW 9A.36.011(1)(a): intentional assault with a deadly weapon, likely to produce great bodily harm or death. The method of second degree assault on which the

10

jury was instructed as an alternative was that provided by RCW 9A.36.021(1)(c): assault with a deadly weapon not amounting to assault in the first degree.

By contrast, a person is guilty of the method of third degree assault urged by Mr. Deweber as applying if he or she,

> under circumstances not amounting to assault in the first or second degree:
>
> . . . .
>
> (g) Assaults a law enforcement officer or other employee of a law enforcement agency who was performing his or her official duties at the time of the assault.

RCW 9A.36.031(1)(g) (2013).

Mr. Deweber argues that if the jury concluded his pickup truck struck the police vehicles under circumstances in which the truck was not readily capable of causing death or substantial bodily harm, then it could find him guilty of third degree assault but acquit him of first and second degree assault. But the evidence as to the truck's capacity to cause harm consisted of the pictures of the vehicles; the testimony of many witnesses to Mr. Deweber's suicidal behavior; the testimony of a psychologist, testifying for the defense, that Mr. Deweber intended to cause great bodily injury to himself; the testimony of multiple officers as to high speeds driven that night by Mr. Deweber; the testimony that he accelerated before striking the police vehicles; the testimony of a nearby resident who saw the collision and estimated the speed of the pickup truck as at "[a]t least a hundred or more"; Sergeant Clarke's testimony that immediately after the collision he notified dispatch that he estimated the pickup truck's speed on impact at over a hundred

11

miles per hour; his testimony that having looked at his patrol car several times, it was his opinion that "there is no possible way anybody would have survived inside of my vehicle"; and Officer Grant's testimony that the damage to the police vehicles was much worse than damage to vehicles involved in fatal accidents to which she had responded as a patrol officer and, while she might have survived the impact, "there is no way that Sergeant Clarke would have." RP at 164, 196, 221. There was no affirmative evidence suggesting that Mr. Deweber's truck struck the police vehicles in circumstances in which it was *not* readily capable of causing death or substantial bodily harm. The trial court did not err in refusing to instruct the jury on third degree assault.

We affirm the convictions and remand for resentencing.[6]

A majority of the panel has determined this opinion will not be printed in the Washington Appellate Reports, but it will be filed for public record pursuant to RCW 2.06.040.

Siddoway, J.

I CONCUR:

Lawrence-Berrey, A.C.J.

_____

[6] A postargument motion by Mr. Deweber to deny appellate costs if the State substantially prevailed on appeal was referred to the panel for decision. Given Mr. Deweber's successful challenge to the exceptional sentence, the issue is moot.

12

33247-1-III

KORSMO, J. (dissenting) — Labeling something a *Blakely*[1] error does not automatically make it so, let alone render it immune to harmless error analysis. This is a case in point. Appellant's argument assumes that a *Blakely* error occurred without proving such was the case. Appellant points to no relevant authority suggesting that an allegedly erroneously worded verdict form constitutes *Blakely* error. But even if this were a *Blakely* error, it is absolutely harmless beyond a reasonable doubt because the jury was instructed on the "elements" of the question it had to answer and responded with a positive answer. The special verdict was found by the jury, distinguishing this case from that relied on by the majority. This case involves nothing more than run-of-the-mill instructional error in the context of the verdict form.

There is no requirement that a verdict form, even a special verdict form, recite all of the elements of the offense or special verdict. Typically a verdict form would state something along these lines: "We the jury find the defendant, John Doe, _____ [guilty or not guilty] of the crime of XX as charged in count I." WPIC 180.01. The elements are

---

[1] *Blakely v. Washington*, 542 U.S. 296, 124 S. Ct. 2531, 159 L. Ed. 2d 403 (2004).

not recited or discussed in the least. There is no authority I am aware of labeling this form as defective under *Blakely* because of the absence of the elements from the verdict. Similarly, most special verdicts forms simply recite the question to be answered: "Was the defendant armed with a deadly weapon at the time of the commission of the crime in count I? ___ (Yes or No)." WPIC 190.01. Again, the elements of the deadly weapon finding are not stated in the verdict form.

In some civil actions, and less often in criminal cases, the jury is asked to answer one or more questions. These inquiries are of varying complexity depending on the issues at hand and/or the creativity of the bench and bar. One example from the criminal side can be found in the capital sentencing statute where the legislature has propounded a detailed question for the jury to resolve. RCW 10.95.060(4). In some instances, the special verdict form recommended by the pattern form committee does consist of a question that includes the "elements" of the special verdict. *E.g.*, WPIC 36.09 (verdict distinguishing misdemeanor from felony harassment). However, no authority has been cited that requires this approach. Typically, element-inspired special verdicts are reserved for unusual circumstances such as harassment where an additional finding, somewhat overlapping the elements of the crime, defines the degree of the offense that the jury has just found. This helps avoid jury confusion.

As important here, however, nothing in our case law requires that the special verdict form set forth the underlying elements of the special verdict. As long as the jury

2

was properly instructed on the elements—as was done in this case—the verdict form need only assure that the jury is returning a verdict on the question presented to them. An apt description is all that is necessary so that the jury's determination concerning the aggravating factor as to each officer was understood by the court. Here, however, the verdict form reflects an answer to an incomplete interrogatory.

While certainly a plausible argument could be made that the special verdict conflicted with the definitional instruction, appellant does not pursue that theory. Instead, he likens this case to *Apprendi v. New Jersey*, 530 U.S. 466, 120 S. Ct. 2348, 147 L. Ed. 2d 435 (2000), contending that the jury actually failed to find a necessary fact. The majority agrees, relying on the decision in *State v. Williams-Walker*, 167 Wn.2d 889, 225 P.3d 913 (2010). That case is factually inapposite. There the jury returned a verdict finding that the defendants had used a deadly weapon rather than answering the enhancement charged and submitted to the jury—did the defendant use a firearm? *Id.* at 893-894. The trial court in each instance imposed a firearm enhancement. *Id.* The court reversed the findings, concluding that a judge could not make findings that a jury had not made. *Id.* at 898-899. Such a practice would render the statutory requirement of a jury finding meaningless. *Id.* at 899.

Critical to the court's analysis was the fact that a deadly weapon finding was also authorized by statute, although none had been alleged in the consolidated cases in *Williams-Walker*. *Id.* at 897-899. The court concluded that a "sentence enhancement

3

must not only be alleged, it also must be authorized by the jury in the form of a special verdict." *Id.* at 900. The court then turned to the question of harmless error. Since the jury had not returned the special verdict on the charged allegation, the error could never be harmless because the judge imposed a sentence enhancement that was not authorized by the jury's finding. *Id.* at 900-901.

There is distinction between a finding that was never made because the jury was never asked to respond to the charged enhancement—at issue in *Williams-Walker*—and a finding returned in a verdict form that contained error. Erroneous jury verdict forms are, unfortunately, a recurring problem. When presented with such occurrences, the reviewing court always has considered whether or not the error was harmless. For instance, in a prosecution for attempted possession of marijuana with intent to manufacture or deliver, the verdict form omitted the word "attempted." *State v. Imhoff*, 78 Wn. App. 349, 350, 898 P.2d 852 (1995). On appeal, Division One concluded that the error was harmless because the defendant had been charged with the correct offense and the jury was properly instructed on the elements of attempted possession of marijuana with intent to manufacture or deliver. *Id.* at 350-351.

A case more squarely on point to this action is a civil case, *Capers v. The Bon Marche*, 91 Wn. App. 138, 955 P.2d 822 (1998). There the special verdict form failed to include language dictated by an intervening construction of the Washington Law Against Discrimination issued by the Washington Supreme Court. *Id.* at 142-143. The court

4

concluded that, read as a whole, the instructions properly stated the law to the jury. *Id.* at 143. The "instructions were not legally erroneous merely because the special verdict form omitted the 'substantial factor' language where its accompanying instruction properly set forth the applicable law." *Id.* Thus, "a special verdict form need not recite each and every legal element necessary to a particular cause of action where there is an accurate accompanying instruction." *Id.* at 144. Nonetheless, the instruction was misleading because it conflicted with the definitional instruction, a problem further complicated by the defense argument. *Id.* at 143-144. A new trial was ordered. *Id.* at 145.

In support of its determination that the special verdict was not legally erroneous despite the missing language required by the intervening decision, *Capers* noted several earlier decisions supporting its view of the governing law. *Id.* at 143; *Hue v. Farmboy Spray Co.*, 127 Wn.2d 67, 90-93, 896 P.2d 682 (1995) (rejecting argument that special verdict form conflicted with other instructions); *Smith v. Sturm, Ruger & Co.*, 39 Wn. App. 740, 745, 695 P.2d 600 (1985) (rejecting argument that special verdict did not contain all necessary elements since it need not unless it purports to do so).

A third case relied on in *Capers* and in *Smith* is particularly important in setting forth the governing law: *Ryder v. Kelly-Springfield Tire Co.*, 91 Wn.2d 111, 587 P.2d 160 (1978). *Capers*, 91 Wn. App. at 143; *Smith*, 39 Wn. App. 745. There the allegation was that a jury instruction was erroneous and that other instructions should have been given. The court first noted the basic rule governing review of instructional issues—the

5

No. 33247-1-III
*State v. Deweber*

appellate court will only consider arguments raised in the trial court. *Ryder*, 91 Wn.2d at

114. The court then defined the problem at hand:

> An erroneous formula instruction has been said to be one that purports to contain all the elements necessary for a verdict for either party, but which neither includes all such elements nor refers to other instructions which do.

*Id.* at 115. *Ryder* then rejected the challenge to the instruction at issue because it did "not

purport to summarize all of the issues of the case for the jury." *Id.*

Similarly here, the special verdict did not purport to be the end-all and be-all

instruction concerning the law enforcement victim aggravating factor. That factor was

defined for the jury by instruction 22. Thus, the special verdict was not erroneous for the

failure to include the entire statutory definition on its form. In combination, the

differences between the definition and the special verdict had the possibility of confusing

the jury, but Mr. Deweber does not raise that argument and we have no authority to

consider it.[2] *Id.* at 114. Accordingly, on this record we have no basis for overturning the

special verdict. The jury was properly instructed on the law and the special verdict form

did not purport to be the entire law on the subject. We should affirm the special verdict.

---

[2] If the issue had been properly preserved and successfully argued in this appeal, the remedy would have been remand for a new trial on the aggravating factor. *See generally, State v. Pillatos*, 159 Wn.2d 459, 150 P.3d 1130 (2007).

But even if Mr. Deweber had established error, it was of a different variety from that in *Williams-Walker* and, hence, was subject to harmless error analysis.[3] A missing element is subject to harmless error. *Neder v. United States*, 527 U.S. 1, 18, 119 S. Ct. 1827, 144 L. Ed. 2d 35 (1999); *State v. Brown*, 147 Wn.2d 330, 340-341, 58 P.3d 889 (2002). The error found by the majority is that an element was missing from the verdict form. Therefore, it needs to address *Neder*.

In light of the evidence presented that Mr. Deweber was trying to commit "suicide by cop" when he rammed the patrol vehicles, both of which had overhead lights in operation, during his exceedingly dangerous efforts to provoke a fatal police response, it simply cannot be said that the missing language about knowledge of the officers' identity was harmful in the least. The fact that patrol cars were driven by police officers is the very reason Mr. Deweber rammed into them in a scene that sounds like it came from a Hollywood movie. The knowledge aspect of the aggravating factor was never in doubt, factually or legally. Since the jury was correctly instructed on what it needed to find and

---

[3] A case that is closer factually is *State v. Fehr*, 185 Wn. App. 505, 341 P.3d 363 (2015), where the verdict form asked if the crimes had been committed within 1,000 feet of a school bus *route* instead of a school bus route *stop*. However, *Fehr* does not support the defendant here because it does not appear that the jury was ever instructed on the bus stop aggravator. Like *Williams-Walker*, the jury answered a different factual question than was alleged in the charging document. Here, only one aggravating factor was alleged and the jury's verdict was, at worst, an incomplete answer to the question presented. There is a difference between asking the jury to answer the wrong question (*Williams-Walker* and *Fehr*), and asking the correct question in the wrong manner (this case).

7

No. 33247-1-III
*State v. Deweber*

the "missing" fact on the special verdict form was not a contested issue, the alleged error was harmless beyond a reasonable doubt.

Accordingly, the judgment and sentence should be affirmed. Since the majority concludes otherwise, I respectfully dissent.

_____
Korsmo, J.

8