William BAUMHOLSER and Eileen Baumholser, Plaintiffs–Appellees,

v.

AMAX COAL COMPANY, Defendant–Appellant.

No. 78–1363.

United States Court of Appeals, Seventh Circuit.

Argued Feb. 9, 1979.

Decided Sept. 22, 1980.

G. Daniel Kelley, Jr., Indianapolis, Ind., for defendant–appellant.

Terry R. Noffsinger, Evansville, Ind., for plaintiffs–appellees.

Before SWYGERT and CUMMINGS, Circuit Judges, and CROWLEY, District Judge.*

* The Honorable John Powers Crowley, Northern District of Illinois, sitting by designation.

CROWLEY, District Judge.

Plaintiffs William and Eileen Baumholser brought this diversity action against defendant Amax Coal Company (Amax), alleging that blasting operations at Amax's surface coal mine caused extensive damage to the foundation and walls of their home approximately two miles from the mine. The jury returned a verdict in favor of the plaintiffs in the amount of $10,000.00.

Amax assigns three errors: (1) that Jack Barnes, a geologist from Indiana State University, was improperly qualified as an expert and should not have been permitted to testify on the issue of the proximate cause of damage to the Baumholser home; (2) that the admission into evidence of a survey conducted by Barnes assessing structural damage to the other residences in the area was erroneous and highly prejudicial; and (3) that the trial court's Instruction No. 11 incorrectly stated Indiana law on the measure of damages. We reject appellant's contentions on the issue of Barnes' qualification and the damage instruction and hold that, while the study should not have been admitted, its admission was harmless under the circumstances of this case.

Amax challenges Barnes' qualifications solely on the fact that Barnes has had no previous experience with strip mining or the effects of blasting and limited experience with seismographs and geophysics prospecting. Amax argues that general knowledge in the field of geology is insufficient to qualify a witness as an expert with respect to the specific issues involved in this case. Amax asserts that despite Barnes' academic credentials and experience in related areas, he lacks the precise technical background necessary to qualify him to render an opinion on the issue of whether the Amax blasting caused structural damage to the Baumholser residence.

Barnes, however, has had extensive academic and practical experience in the field of geology. He received a Bachelor of Science degree and a Master of Science degree in geology from the University of Michigan. He has worked as a geologist for twenty–five years, with experience as an explora-

tion and research geologist, a consultant and a professor. He was also familiar with similar issues which had been studied by the Atomic Energy Commission. At the time of trial, he was president of the Indiana–Kentucky Geological Society and a member of the Federation of American Scientists and the American Association of Petroleum Geologists.

Any inquiry into the propriety of Barnes' giving expert opinion must necessarily begin with Rule 702 of the Federal Rules of Evidence, which provides:

> If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise.

■ It is clear that determination of expertise is a matter committed to the sound discretion of the trial judge. If the trial judge concludes that the witness possesses the background to give an expert opinion that finding will not be disturbed unless it is clearly erroneous. *Lolie v. Ohio Brass Company*, 502 F.2d 741 (7th Cir. 1974). Considering the qualifications of the witness the trial court was clearly correct in allowing him to testify as an expert. The fact that he had little actual experience in the study of blasts from coal mining operations did not disqualify him from expressing his opinion, which was based on general geological principles. *Gardner v. General Motors Corp.*, 507 F.2d 525 (10th Cir. 1974); 3 Weinstein, *Evidence*, ¶ 702(01).

Barnes testified that his study of buildings near the Amax mine revealed a direct correlation between structural damage and distance from the mine. Barnes arrived at his conclusions, in part, by studying the subsurface soil in the area and analyzing his findings in light of general scientific principles of the effects of spherical shock waves. This testimony is subject matter within the scope of a geologist's expertise. Thus, the trial judge did not err in admitting Barnes' opinion testimony.

Appellant next complains that a study conducted by Barnes should not have been admitted and that its admission seriously prejudiced Amax. The Barnes study consisted of statistics gathered by a questionnarie inquiry of 169 residents living within a six–mile radius from the mine concerning the number, length and width of cracks discovered in their homes. The interviewers were students at Indiana State University, parishioners of St. John's Church, homeowners in the area, Mr. Barnes and the Baumholsers. After the data was gathered, Barnes personally verified the information in 60 of the 169 interviews. The damage reported was then plotted on a map of the mining area according to the degree of damage and the relative distance from the center of the mine. Additionally, a graph, analyzing the type of home damage reported in terms of distance from the mine, was constructed. The entire study was admitted into evidence. It was a collection of a location map of the Ayrshire Mine; a diagram showing shock wave propagation; the home damage report used to gather data during the interview; a map showing the effects of strip mine blasting; a map showing the blast ring effect of strip mine blasting; a summary of the home damage survey relating the damage reported to the type of construction and blasting frequency; and a graph showing home damage as a function of distance from the mine.

Amax claims that the Barnes study is inadmissible under any theory. It contends that the study is hearsay which does not fall within any recognized exception. Further, it asserts that the study is inadmissible as the basis of opinion testimony under Rule 703 because the survey is not "of a type reasonably relied upon by experts in the particular field." Finally, Amax urges that the Barnes survey suffers from major flaws in its methodology which renders it inadmissible for any purpose because it is invalid.

Barnes testified, however, that the study was similar to the one conducted by the Atomic Energy Commission.

We agree with Amax that the study was hearsay and that it was not independently admissible. To qualify a study or opinion poll for admission into evidence, there must be a substantial showing of reliability. There must be some showing that the poll is conducted in accordance with generally accepted survey principles and that the results are used in a statistically correct manner. *Pittsburgh Press Club v. United States*, 579 F.2d 751 (3d Cir. 1978). When these requirements are satisfied surveys are admissible. *Zippo Manufacturing Co. v. Rogers Imports, Inc.*, 216 F.Supp. 670 (S.D.N.Y.1963) (scientifically conducted unbiased survey admissible to establish likelihood of confusion between products); *James Burrough Ltd. v. Sign of Beefeater, Inc.*, 540 F.2d 266 (7th Cir. 1976) (survey conducted by qualified experts and impartial interviewer admitted on the issue of likelihood of confusion between distiller's label and restaurant sign); *Randy's Studebaker Sales, Inc. v. Nissan Motor Corporation in U.S.A.*, 533 F.2d 510 (10th Cir. 1976) (customers' responses to questionnaires evaluating quality of dealer's service department admissible as reflective of customers' then–existing state of mind); *Union Carbide Corp. v. Ever–Ready Inc.*, 531 F.2d 366 (7th Cir.), *cert. denied*, 429 U.S. 830, 97 S.Ct. 91, 50 L.Ed.2d 94 (1976) (two surveys taken by an expert in market research and public opinion admissible on the issue of likelihood of confusion between Ever–Ready and Carbide products); *Grotrian, Helfferich, Schulz, Th. Steinweg Nachf. v. Steinway & Sons*, 523 F.2d 1331 (2d Cir. 1975) (survey commissioned by domestic piano manufacturer to determine whether consumer confusion existed between its trade name and that of German manufacturer admissible); *The President and Trustees of Colby College v. Colby College–New Hampshire*, 508 F.2d 804 (1st Cir. 1975) (qualified survey evidence admissible to establish secondary meaning of plaintiff's name in minds of consuming public); *Holiday Inns, Inc. v. Holiday Out in America*, 481 F.2d 445 (5th Cir. 1973) (survey evidence supporting an allegation of likelihood of confusion of service marks admissible).

However, the lack of independent grounds for admissibility does not require reversal. Barnes was testifying as an expert and as such was entitled to rely on hearsay evidence to support his opinion, so long as that evidence was of a type reasonably relied upon by other experts in the field. That evidence need not be independently admissible. Rule 703 of the Federal Rules of Evidence provides:

The facts or data in the particular case upon which an expert bases an opinion or inference may be those perceived by or made known to him at or before the hearing. *If of a type reasonably relied upon by experts in the particular field in forming opinions or inferences upon the subject, the facts or data need not be admissible in evidence.* (emphasis added)

Barnes testified that a similar survey was conducted by the Atomic Energy Commission to study the effects of blasts in Colorado. This testimony was uncontradicted and unrebutted. It more than satisfied the threshold inquiry as to whether other experts would rely upon it.

This standard has been eloquently expressed in *Standard Oil Company of California v. Moore*, 251 F.2d 188 (9th Cir. 1957), *cert. denied*, 356 U.S. 975, 78 S.Ct. 1139, 2 L.Ed.2d 1148 (1958), where the court stated at page 222:

It is common practice for a prospective witness, in preparing himself to express an expert opinion, to pursue pretrial studies and investigations of one kind or another. Frequently, the information so gained is hearsay or double hearsay, in so far as the trier of the facts is concerned. This, however, does not necessarily stand in the way of receiving such expert opinion in evidence. It is for the trial court to determine, in the exercise of its discretion, whether the expert's sources of information are sufficiently reliable to warrant reception of the opinion. If the court so finds, the opinion may be expressed. If the opinion is received, the court may, in its discretion, allow the expert to reveal to the jury the information gained during such investigations

and studies. Wide latitude in cross–examination should be allowed.

In admitting the testimony the trial judge carefully considered the competing factors. He allowed extensive cross–examination, both on the reliability of the survey and the conclusions reached. The defendant produced its own experts to testify about the effects of the blasting. Under all the circumstances, we cannot find that the admission of the survey itself had any prejudicial effect on the jury.

Finally, Amax contends that the trial court's instruction on the measure of damages was incorrect as a matter of law. The court instructed the jury:

If you find that the plaintiffs are entitled to recover in this action on Count I of their complaint, then you must determine the amount of money which will fairly compensate them for those damages which are proved by the evidence to have resulted from the detonations set off by the defendant.

The measure of such damages, if any, is the difference between the fair market value of plaintiffs' dwelling and premises immediately before the damage and the fair market value of plaintiffs' dwelling and premises immediately after the damage. However, if you find that the damage, if any, is repairable and not permanent, then you may consider the cost of repairs in determining the amount of damages. In the event you do consider the cost of repairs in determining the amount of damages due and owing the plaintiffs, then you may not also apply the differential fair market value in arriving at such damages. In other words, you may use one or the other of said methods, but not both.

Amax maintains that, under Indiana law, the proper measure of damages for property which has been permanently damaged is the decrease in the market value of the property while the proper measure of damages for non–permanent damage is the cost of restoration. Further, relying on *General Outdoor Advertising Co. v. LaSalle Realty Corp.*, 141 Ind.App. 247, 218 N.E.2d 141

(1966), Amax asserts that permanent injury is defined as injury wherein the cost of repairs exceeds the market value of the building prior to injury.

■ Appellant misinterprets *General Outdoor Advertising Co.* There, in fashioning a flexible measure of damages appropriate to the facts of the case before it, the court defined permanent injury as injury exceeding the cost of restoration. However, the court specifically stated that this measure of damages would not necessarily be equally applicable in all situations. Under dissimilar facts, the *General Outdoor Advertising Co.* definition of permanent damage is inappropriate. Damage resulting from continuous blasting is a unique situation and, therefore, the trial court was not compelled to adhere to the *General Outdoor Advertising Co.* definition of permanent injury.

Accordingly, the judgment is affirmed.