[No. 49211-5.   En Banc.   February 16, 1984.]

RONALD McRAE, ET AL, *Respondents,* v. MORRIS
E. BOLSTAD, ET AL, *Appellants,* NICK
MAZZA, ET AL, *Petitioners.*

STAFFORD, UTTER, and BRACHTENBACH, JJ., concur in the result only;
PEARSON, J., did not participate in the disposition of this case.

162

*Davies, Pearson & Anderson, P.S.,* by *John C. Kouklis,* for petitioners.

*Anderson & Caraher* and *James M. Caraher,* for respondents.

DORE, J.—The sellers of real estate appeal the trial court's judgment on a verdict in favor of the plaintiff purchasers, who sought damages for fraudulent misrepresentation and violation of RCW 19.86, the Consumer Protection Act. The Court of Appeals affirmed the judgment and awarded attorney fees on appeal. We now affirm the trial court and Court of Appeals and award additional reasonable attorney fees on appeal.

In November 1977, Nick Mazza of Crescent Realty, Inc., undertook the representation of the Bolstads in the sale of their home. Mazza grew up in the area, and had been involved in the sale of real estate in the area for some time. He had sold approximately 30 houses in the immediate vicinity of the house, and had sold this particular house to the Bolstads. At the time the Bolstads signed the listing agreement, Mazza asked them if there was anything wrong with the property and was told that there was not. In reality, the Bolstads were having problems with their neigh-

bors' sewage spilling on the property and Mazza knew, through the previous sale of the premises to the Bolstads, that there were chronic drainage and sewage problems. Woody Woodworth, the real estate agent who showed the house to the McRaes, lived across the street from the house and had previously dug a ditch on his property to alleviate drainage problems.

On November 30, 1977, the McRaes agreed in writing to buy the property, and took possession on January 30, 1978. During the time between signing the earnest money agreement and taking possession, the McRaes found water standing on the front lawn and a musty smell in the backyard, but were not told of the past experiences of sewage coming from the neighbors' property. Immediately prior to the finalization of this sale, Mazza contacted the Bolstads with regard to digging drainage ditches to remove water from the front yard. Mazza did not, however, make any statements to the McRaes concerning the standing water condition in the yard, or disclose any of the facts surrounding the history of the sewage and drainage problems. Additionally, Mazza did not disclose any of these facts to the inspectors who were required to inspect in order to qualify for financing. In the selling of the house to the Bolstads, the previous owners informed Mazza that they had attempted to remedy the drainage problem by putting in drainage tile, but had not completed the job. Mazza told the McRaes there was "no problem" with the fact that the Bolstads had attempted to place a swimming pool in the backyard, but had to abandon the project because the hole filled with water.

The deed and supporting documents were signed on February 3, 1978 and the deed was recorded on February 7, 1978. Three days later, the toilets in the house erupted with raw sewage. The McRaes brought an action in superior court, alleging violations of the Consumer Protection Act and fraudulent misrepresentation.

At the trial, Mrs. Bolstad testified that at the time the Bolstads purchased the home, a Federal Housing Adminis-

tration work order on the house required several repairs as conditions of sale, including ditches under the house so there was no standing water, and a polyethylene moisture barrier under the house. There was also testimony at trial that neither the Bolstads nor either of the real estate agents informed the inspectors sent by the lending institutions of the drainage and sewer effluent problems which the Bolstads had encountered.

The jury returned a verdict of $20,000 for the McRaes, answering the special interrogatories as follows:

INTERROGATORY No. 1: Did the Bolstads themselves fail to affirmatively inform the plaintiffs of any or all claimed material defects in this real property?

Answer: Yes.

INTERROGATORY No. 2: Did the defendants Bolstad, through their real estate agents, fail to affirmatively inform the plaintiffs of any or all material defects in this real property?

Answer: Yes.

INTERROGATORY No. 3: Did the defendants Bolstad inform the listing agent Mazza of any or all of the claimed material defects in this real property?

Answer: No.

INTERROGATORY No. 4: Did the listing agent Mazza inform the selling agent Woodworth of any claimed material defects in this real property he was told by the Bolstads, or that he had reasonable grounds to believe existed in this real property?

Answer: No.

INTERROGATORY No. 5: Did the selling agent Woodworth affirmatively inform the plaintiffs of any or all of the claimed material defects in this real property he was told of by the listing agent Mazza, or that he had reasonable grounds to believe existed on this real property?

Answer: No.

INTERROGATORY No. 6: Did either real estate agent act in an unfair and deceptive manner to the plaintiffs?

Answer: Yes.

INTERROGATORY No. 7: If your answer to Interrogatory No. 6 is "Yes," then name the real estate agent or agents who acted in that fashion.

Answer: Nick Mazza.

Clerk's Papers, at 81–82. The court allowed reasonable attorney fees.

I

On appeal, counsel for Mazza and Crescent Realty argue the Consumer Protection Act does not apply to their conduct in the sale of the real estate because there was no showing that any act or practice by Mazza affected the public interest. For the reasons stated below, we disagree.

For a private individual to initiate an action under the Consumer Protection Act, "the conduct complained of must: (1) be unfair or deceptive; (2) be within the sphere of trade or commerce; and (3) impact the public interest." *Anhold v. Daniels,* 94 Wn.2d 40, 45, 614 P.2d 184 (1980). A per se violation of the Consumer Protection Act may be established through proof that a defendant's conduct was illegal under a statute other than the Consumer Protection Act and that the conduct was against public policy. *State v. Reader's Digest Ass'n,* 81 Wn.2d 259, 501 P.2d 290 (1972) (Reader's Digest Sweepstakes lottery per se violation); *State v. Ralph Williams' N.W. Chrysler Plymouth, Inc.,* 87 Wn.2d 298, 553 P.2d 423 (1976) (failure to return profits from repossession sales per se violation); *Salois v. Mutual of Omaha Ins. Co.,* 90 Wn.2d 355, 581 P.2d 1349 (1978) (breach of duty of good faith and fair dealing in refusing to pay plaintiff's claim for insurance benefits per se violation).

A plaintiff may also establish the public interest element through satisfaction of the test established by this court in *Anhold v. Daniels, supra* at 46:

> [T]he presence of public interest is demonstrated when the proof establishes that (1) the defendant by unfair or deceptive acts or practices in the conduct of trade or commerce has induced the plaintiff to act or refrain from acting; (2) the plaintiff suffers damage brought about by such action or failure to act; and (3) the defendant's deceptive acts or practices have the potential for repetition.

*See also Haner v. Quincy Farm Chems., Inc.,* 97 Wn.2d 753, 649 P.2d 828 (1982).

The plaintiffs in the present case have successfully proven each of the three parts of the public interest test announced in *Anhold* and previously set forth in this opinion. The jury was required to find that the McRaes relied upon the failure to disclose material facts about the property. Additionally, failure of a salesman to disclose information has long been recognized as the basis for an action under RCW 19.86. *See, e.g., Testo v. Russ Dunmire Oldsmobile, Inc.,* 16 Wn. App. 39, 554 P.2d 349, 83 A.L.R.3d 680 (1976). Thus, the first element of the *Anhold* test, inducement to act, has been met. The second element of damage brought on by the failure to act has also been established.

■ The record also reflects the potential for repetition present in Mazza's failure to disclose the house's defects to the McRaes. Crescent Realty placed the Bolstad listing in the multiple listing service directory with the intent to sell the property. Mazza had knowledge of the defects, yet failed to include this information in the listing. The listing was placed directly before the general public, of which the McRaes were members. Mazza previously had sold the house to the Bolstads, presumably also without disclosing the house's defects. Evidence that others have been injured by similar deceptive representations is sufficient to establish the potential for repetition. *Anhold,* at 47. It is the likelihood that additional buyers will be injured in exactly the same fashion that changes a factual pattern from a private dispute to one that affects the public interest. The prior instance of possible misrepresentation, in conjunction with the listing of the property in the multiple listing service, establishes the potential for repetition, thus satisfying the requirements of the public interest test established in *Anhold.* We, therefore, hold that the trial court was correct in applying the Consumer Protection Act.

## II

We next address the issue of whether the trial court erred in refusing to give the defendants' proposed instruction 4 outlining the nine elements of common law fraud.

One of the nine essential elements of common law fraud is that the defendant *intended* his misrepresentation of fact to deceive and be acted upon by the person to whom it is made. *Beckendorf v. Beckendorf*, 76 Wn.2d 457, 457 P.2d 603 (1969). Under the Consumer Protection Act, however, proof of intent to deceive or defraud is not necessary if the action "has the capacity to deceive a substantial portion of the purchasing public." *Haner*, at 759. As the proposed instruction erroneously included "intent to deceive" as an element, the trial court did not err in refusing to so instruct the jury.

We do not believe, however, that the failure of the defendant to submit an adequate instruction outlining the elements of fraudulent misrepresentation under the Consumer Protection Act precluded proper jury instruction.

We agree with the Court of Appeals that the instructions given the jury adequately covered the elements of fraudulent misrepresentation. In instructions 9 and 10, the court informed the jury that in the sale of real estate, a broker or seller has the duty to disclose all material facts not reasonably ascertainable to the buyer. *See Alexander Myers & Co. v. Hopke*, 88 Wn.2d 449, 565 P.2d 80 (1977). The jury was also instructed that failure to disclose a material fact, where there is a duty to disclose it, is fraudulent. *Obde v. Schlemeyer*, 56 Wn.2d 449, 353 P.2d 672 (1960). The court also instructed the jury that property purchasers have the right to rely upon the sellers' representation, including any representation made by their agents. *Dixon v. MacGillivray*, 29 Wn.2d 30, 185 P.2d 109 (1947). Thus, the jury was properly instructed on all the elements of common law fraud except intent to deceive.

### III

We are not persuaded by the appellants' argument that the plaintiffs could withdraw from the closing of this sale without incurring legal liability for their action. Appellants argued that this instruction incorrectly states the law because a purchaser may rescind a contract for the sale and

purchase of real estate because of fraud. *French v. C.D. & E. Inv. Co.*, 114 Wash. 416, 421, 195 P. 521 (1921). This argument is based on the premise that the McRaes were put on notice of the problem by the erupting toilets *before* the closing transaction occurred. The record indicates, however, that the toilets overflowed on February 10, 1978, 3 days after the statutory warranty deed was recorded on February 7, 1978. The trial court was, therefore, correct in instructing the jury that the plaintiffs could not withdraw from the closing without incurring legal liability. There was sufficient evidence present at trial to substantiate the special interrogatories.

We affirm the jury verdict and judgment, and remand for a determination of respondents' costs and reasonable attorney fees on appeal.

WILLIAMS, C.J., ROSELLINI, DOLLIVER, and DIMMICK, JJ., and CUNNINGHAM, J. Pro Tem., concur.

STAFFORD, UTTER, and BRACHTENBACH, JJ., concur in the result.