[No. 5517-5-III.   Division Three.   February 5, 1985.]

WAYNE C. SMITH, *Appellant*, v. STURM, RUGER & CO., INC., *Respondent*.

*Edward A. Dawson, Marcia Meade,* and *Dawson & Meade,* for appellant.

*Frank H. Johnson, Steven Stocker,* and *MacGillivray & Jones,* for respondent.

Munson, J.—Wayne C. Smith appeals a judgment on a jury verdict adverse to his products liability claim and the trial court's dismissal of his Consumer Protection Act (CPA) claim. He contends: (1) the special verdict form was improper; (2) his CPA claim should have gone to the jury; and (3) testimony by his expert regarding a survey taken by a consultant for Sturm, Ruger & Co., Inc. (Sturm) was admissible. We affirm.

On December 2, 1979,[1] Smith sustained injuries from an accidental discharge of a Sturm, Ruger Super Blackhawk .44 magnum single–action revolver. The accident occurred shortly after Smith returned from a daylong woodcutting trip. He had taken the revolver and two rifles with him,

---

[1]The products liability act, RCW 7.72, is therefore inapplicable. *See* RCW 4.22.920 (act applies to claims arising on or after July 26, 1981).

anticipating he might go deer hunting with his brother. However, he did not hunt; he cut wood all day. Upon returning home, Smith started to carry several items upstairs from the garage. He carried in his right hand two unloaded hunting rifles; in his left hand was a folded plastic hunting vest, a map, and the fully loaded revolver which he was grasping by the barrel end of the holster. As he proceeded up the stairs, the holster slipped from his hand. The revolver struck a carpeted step, resulting in the discharge of a bullet which severely injured Smith's left arm. At the time of discharge, the gun was in the "full down" position, *i.e.,* the hammer was resting on a loaded cylinder.

Smith had owned approximately 35 different guns and had a long history of experience with firearms. Smith's gun safety knowledge was learned from his father and uncles, and from a safety course which emphasized .22 caliber rifles. He obtained this revolver in a used condition in 1975 or 1976 from an acquaintance, who did not give Smith the safety manual which accompanied the revolver when purchased new. Smith did not ask the acquaintance about such a manual or make any attempt to obtain one from Sturm or any local distributor.

Sturm manufactured this model from 1953 to 1972. It was adapted from the 1873 Colt single–action revolver, and has been termed "emblematic of the western guns". *Sturm, Ruger & Co. v. Bloyd,* 586 S.W.2d 19, 20 (Ky. 1979). The hammer on this model has four notches (clicks): full down (hammer resting against firing pin), safety notch, loading notch, and full back. A witness for Sturm testified the four clicks are thought to symbolize the four letters C–O–L–T.

It is undisputed that, at the time of this accident, Smith's revolver was fully loaded and in the full down position. This was his habit. He had never heard of the safety notch or of the practice of loading only five chambers and resting the firing pin on the empty chamber. There was no warning on the gun itself against carrying it in the full down position. *See generally* Annot., *Products Liability: Firearms, Ammunition, and Chemical Weapons,* 15

A.L.R.4th 909 (1982).

Smith first contends the special verdict form was prejudicially erroneous. The jury answered "yes" to the first question on the form:

> QUESTION No. 1: Was Wayne Smith's own conduct the sole proximate cause of the injury or damage to the plaintiff?
> ANSWER: _____ (Yes or No).
> (If your answer is "No", proceed to Question No. 2. If your answer is "Yes", you need go no further. Date and sign this form and inform the bailiff your deliberations have ended.)

The Washington law of strict liability focuses on the buyer's expectation of the product, not upon the actions of the seller or manufacturer. The manufacturer's liability is measured solely by the characteristics of the product rather than the manufacturer's behavior. *Lenhardt v. Ford Motor Co.,* 102 Wn.2d 208, 212–13, 683 P.2d 1097 (1984). Nevertheless, the plaintiff in a products liability case must prove the claimed defect proximately caused the alleged injuries. *Ulmer v. Ford Motor Co.,* 75 Wn.2d 522, 452 P.2d 729 (1969); *Bich v. General Elec. Co.,* 27 Wn. App. 25, 614 P.2d 1323, 10 A.L.R.4th 842 (1980). "Indeed, it has been stated that the heart of the theory of strict liability in tort is the requirement that plaintiff's injury must have been caused by some defect in the product." 63 Am. Jur. 2d *Products Liability* § 558, at 791–92 (1984). Likewise, it is a complete defense in a products liability case if the plaintiff's conduct was the sole proximate cause of the accident. *Wood v. Stihl, Inc.,* 705 F.2d 1101, 1108 (9th Cir. 1983) (applying Washington law); *Teagle v. Fischer & Porter Co.,* 89 Wn.2d 149, 157, 570 P.2d 438 (1977); 63 Am. Jur. 2d *Products Liability* § 558, at 791–92; § 560, at 796 (1984).

Without objection or assignment of error to the sequence of the questions on the verdict form, Smith argues the jury should not have been instructed to consider his conduct

prior to reaching the issue of Sturm's liability.[2] We will not consider this argument. RAP 10.3(a)(3); CR 51(f).

■ Smith argues the jury should not have been allowed to consider unspecified "conduct", but rather should have received a verdict form using the term "misuse".[3] Smith proposed both forms. "Misuse" means use in a manner neither intended nor reasonably foreseeable by the manufacturer. 63A Am. Jur. 2d *Products Liability* § 966, at 108 (1984); Restatement (Second) of Torts § 402A, comment *h,* at 351–52 (1965). The defendant has the burden of proving misuse. *Jackson v. Standard Oil Co.,* 8 Wn. App. 83, 505 P.2d 139 (1972). However, dropping a loaded gun is foreseeable as a matter of law. *Sturm, Ruger & Co. v. Day,* 594 P.2d 38, 42 n.2 (Alaska 1979), *modified on other grounds,* 615 P.2d 621 (1980), *cert. denied,* 454 U.S. 894, 70 L. Ed. 2d 209, 102 S. Ct. 391 (1981); *Cobb v. Insured Lloyds,* 387 So. 2d 13, 15 A.L.R.4th 896 (La. Ct. App. 1980). Therefore misuse has no place in this case.

Smith nevertheless injected misuse into the trial and it has become the law of the case. The jury received a misuse instruction which is not challenged. In the context in which this case was tried, we hold the verdict form was proper.

Smith argues the jury was required to determine an issue

---

[2]A similar form was used in *Zahrte v. Sturm, Ruger & Co.,* 498 F. Supp. 389 (D. Mont. 1980), *vacated on other grounds,* 709 F.2d 26 (9th Cir.), *cert. denied,* ___ U.S. ___, 78 L. Ed. 2d 338, 104 S. Ct. 395 (1983), about which we make no comment other than to note the decision.

[3]Plaintiff's proposed instruction 80 provided in part:

QUESTION No. 1: Did Wayne Smith "misuse" the product supplied by the defendant?
ANSWER: _____ (Yes or No).
(If your answer is "No", proceed to Question No. 3. If your answer is "Yes", proceed to Question No. 2.)

QUESTION No. 2: Was such "misuse" the sole proximate cause of the injury or damage to the plaintiff?
ANSWER: _____ (Yes or No).
(If your answer is "No", proceed to Question No. 3. If your answer is "Yes", you need go no further. Date and sign this form and inform the bailiff your deliberations have ended.)

of law, *i.e.*, what conduct would bar recovery. The jury was given instructions on misuse, proximate cause, and the manufacturer's duty to warn. These instructions allowed the parties to argue their theories and are not challenged. *See generally Petersen v. State,* 100 Wn.2d 421, 435–36, 671 P.2d 230 (1983); *Connor v. Skagit Corp.,* 30 Wn. App. 725, 638 P.2d 115 (1981), *aff'd,* 99 Wn.2d 709, 664 P.2d 1208 (1983); *Bich v. General Elec. Co., supra; Enslow v. Helmcke,* 26 Wn. App. 101, 611 P.2d 1338 (1980). If the jury believed the injury occurred other than as the sole conduct of Smith, then it would have answered question 1 of the special verdict form in the negative.

Smith discusses assumption of risk and contributory negligence at unnecessary length. First, during trial Sturm withdrew its defense of assumption of risk. Second, the jury received no instructions on either of these concepts and none were requested. Third, the issue is not damage reduction, but liability, *i.e.*, whether the jury could properly find Smith's conduct was the *sole* proximate cause of his injury. *Teagle v. Fischer & Porter Co., supra; Boeke v. International Paint Co.,* 27 Wn. App. 611, 614 n.1, 620 P.2d 103 (1980), *review denied,* 95 Wn.2d 1004 (1981).

Smith contends the special verdict form was erroneous because it did not list all the elements of strict liability, citing *State v. Emmanuel,* 42 Wn.2d 799, 259 P.2d 845 (1953). But an instruction which does not purport to summarize all the issues is not held to the same standard as a formula instruction. *Estate of Ryder v. Kelly–Springfield Tire Co.,* 91 Wn.2d 111, 115, 587 P.2d 160, 16 A.L.R.4th 129 (1978). The special verdict form clearly did not purport to list all the issues. Rather, it was intended to be read in conjunction with the other instructions.

Smith also argues there was no evidence from which the jury could find he was using the gun in an unreasonable manner; therefore, it could not find his conduct was the sole proximate cause of his injury. Smith had completed a gun safety course. Sturm's expert testified that every safety course includes some version of the "Ten Commandments"

of gun safety, including carrying handguns with the hammer down on an empty chamber and never loading a gun until it is ready for use. The expert also testified a purchaser of a used gun has an obligation to himself and others to inquire about safety information from the manufacturer or a distributor. Smith admitted he never read gun safety manuals except for ammunition information. It is undisputed Smith was carrying two rifles, a map and a hunting vest when the fully loaded revolver slipped out of his hand. In the context of the issues presented to it, a jury could properly find Smith's conduct was the sole proximate cause of his injury.

Smith next contends the trial court erred in dismissing his CPA claim. The court dismissed the claim before trial, but reserved ruling on Smith's motion for reconsideration until the close of his case. The motion was denied, and the court again ruled against Smith on his motion for a new trial or judgment notwithstanding the verdict. The court relied primarily upon the facts the "old model" revolver had not been manufactured for 10 years, Sturm had conducted an extensive advertising campaign, and the company was now offering free installation of transfer bar safeties.

In the 1970's, Sturm mounted an extensive advertising campaign regarding gun safety. James Thompson Ruger, marketing vice–president for Sturm, estimated 50 million people had seen the advertisements over the first 10 years of running them. Ruger testified the advertisements ran 3 to 4 times per year in Sports and Field, Field and Stream and Outdoor Life, and 6 to 12 times per year in Guns and Ammo, Hunting, Shooting Times, and Peterson Hunting magazines. He further stated the advertising campaign began because the company was aware guns manufactured between 1953 and 1972 were going to the next generation of shooters, who may not have had the benefit of the original safety manuals or any safety training.

Sturm began manufacturing the so–called "new model" single–action revolver in 1973. This model has a transfer

bar safety feature which was not present in Smith's "old model". Ruger testified the old model was designed incorporating all the technology available at the time. Purchasers of new model revolvers receive safety instructions for the old model, and there is a place on the purchaser record card to indicate whether the purchaser also owns an old model. In 1982, Sturm began offering free installation of a "conversion kit" transfer bar safety in all old model revolvers. Ruger testified without contradiction that Sturm spent $493,000 on "conversion kit" advertising in 1982, and had received 80,000 responses involving 150,000 guns. Sturm manufactured approximately 1.5 million old model revolvers. The same advertisements and conversion program were scheduled for 1983. Ruger stated the conversion program did not begin sooner because Sturm's plant was not ready to receive the anticipated voluminous response. Ruling on the motion for new trial, the court stated Sturm "has done everything short of—trying to track down all of the weapons and get their hands on them to remedy the situation, . . ."

On the other hand, Smith's expert testified the safety advertisements were inadequate in that they did not convey the danger in carrying a loaded revolver in the full down position. Smith, himself, had never seen any of the advertisements, although he would leaf through shooting magazines at the grocery store and at friends' houses. Furthermore, Smith never read the safety instructions for any of his guns except to look for ammunition information.

In order to recover under the CPA, a plaintiff must prove the defendant's conduct induced the plaintiff to act or refrain from acting, damaged the plaintiff, and has the potential for repetition. *Anhold v. Daniels,* 94 Wn.2d 40, 614 P.2d 184 (1980). The CPA may apply to a defendant's postsale activities. *Salois v. Mutual of Omaha Ins. Co.,* 90 Wn.2d 355, 581 P.2d 1349 (1978). It may also apply to a failure to disclose material facts. *McRae v. Bolstad,* 101 Wn.2d 161, 676 P.2d 496 (1984); *Testo v. Russ Dunmire Oldsmobile, Inc.,* 16 Wn. App. 39, 554 P.2d 349, 83

A.L.R.3d 680 (1976). Intent to deceive is not required; capacity to deceive is sufficient. *McRae v. Bolstad, supra; Haner v. Quincy Farm Chems., Inc.,* 97 Wn.2d 753, 649 P.2d 828 (1982).

█ It has often been reiterated that a plaintiff must prove a defendant *induced* him or her to act or refrain from acting. *E.g., Haner v. Quincy Farm Chems., Inc., supra; Magney v. Lincoln Mut. Sav. Bank,* 34 Wn. App. 45, 659 P.2d 537 (1983). Smith presented no evidence to support a finding of inducement. We find no error.

█ Smith also argues a per se CPA violation, contending the Restatement (Second) of Torts § 402A, comment *c,* at 349–50 (1965), and RCW 9.41 provide the necessary statements of public interest. A per se violation must be based on a specific statutory declaration of public interest. *Sato v. Century 21 Ocean Shores Real Estate,* 101 Wn.2d 599, 681 P.2d 242 (1984); *Sherwood v. Bellevue Dodge, Inc.,* 35 Wn. App. 741, 669 P.2d 1258 (1983). The Restatement (Second) of Torts § 402A, dealing with strict liability, is not a statute. Furthermore, the jury found no such liability. RCW 9.41, "Firearms and Dangerous Weapons", deals with registering of guns, not gun safety or manufacturers' warnings. No violation of it is alleged, nor does it contain a declaration of public interest. The trial court correctly dismissed Smith's CPA claim.

Smith last contends the court erred in disallowing evidence of a certain survey conducted by a Sturm consultant named Rau. It consisted of interviews conducted in the summer of 1982 of a sample of those people who responded to the "conversion kit" advertisements. Smith wished to have his expert extrapolate from the sample the actual number of accidental discharges by "old model" revolvers. He argues the survey was a public opinion poll of the type held admissible in *Zippo Mfg. Co. v. Rogers Imports, Inc.,* 216 F. Supp. 670 (S.D.N.Y. 1963).

The trial court stated several grounds for excluding evidence of the survey. First, the sample was biased in that people responding to the conversion offer were more likely

to have had accidents than the general population of "old model" revolver owners. Then the court ruled that, even though the survey itself was inadmissible, Smith's expert, Dieter Jahns, could testify about it under ER 703 because it was evidence of the type reasonably relied upon by experts in the field. But then the court found Smith had failed to disclose the substance of Jahns' testimony under CR 26, and excluded the survey on that basis. Later, the court again rejected the survey, this time on the basis there was no showing of similarity between Smith's accident and those reported on the survey.

The survey at issue was not a poll of people's opinions about Sturm products. *Randy's Studebaker Sales, Inc. v. Nissan Motor Corp. in U.S.A.,* 533 F.2d 510 (10th Cir. 1976); *Bank of Utah v. Commercial Sec. Bank,* 369 F.2d 19 (10th Cir. 1966), *cert. denied,* 386 U.S. 1018, 18 L. Ed. 2d 456, 87 S. Ct. 1374 (1967); *Zippo Mfg. Co. v. Rogers Imports, Inc., supra;* 1 Pt. 2 J. Moore, *Federal Practice* ¶ 2.712, at 134–36 (2d ed. 1984). Rather, it consisted of accounts of accidents, which have consistently been held to be double hearsay. In *McKinnon v. Skil Corp.,* 638 F.2d 270 (1st Cir. 1981), the court upheld exclusion of Consumer Product Safety Commission reports on the ground most of the data was mere paraphrasing of versions of accidents given by the victims themselves, who could not be regarded as disinterested observers. Likewise, a geologist's survey of 169 residents concerning structural damage to their homes was held to be inadmissible hearsay, in *Baumholser v. Amax Coal Co.,* 630 F.2d 550 (7th Cir. 1980). *Accord, Pittsburgh Press Club v. United States,* 579 F.2d 751 (3d Cir. 1978).

Rau stated the survey was biased because it did not draw from the entire population of "old model" owners. As the court noted, Smith was attempting shaky extrapolations from a shaky basis. The court further ruled there was no showing the accidents reported were similar to Smith's. Whether evidence of prior accidents is admissible, based upon substantial similarity, is a matter of trial court dis-

cretion. *Seay v. Chrysler Corp.*, 93 Wn.2d 319, 609 P.2d 1382, 9 A.L.R.4th 625 (1980); *Blood v. Allied Stores Corp.*, 62 Wn.2d 187, 381 P.2d 742 (1963). The court correctly excluded evidence of the survey on the grounds of bias and irrelevance.

Otherwise inadmissible evidence may be the basis of expert testimony so long as it is of the type reasonably relied upon by experts in the field. ER 703; *Baumholser v. Amax Coal Co., supra; State v. Ecklund,* 30 Wn. App. 313, 633 P.2d 933 (1981). Although the trial court ruled the survey would be admissible on this ground, there was no showing an admittedly biased survey would be relied upon by experts in the field.

Regarding the alleged discovery violation, it is an abuse of discretion to exclude testimony as a sanction absent any showing of intentional nondisclosure, willful violation of a court order, or other unconscionable conduct. *Lampard v. Roth,* 38 Wn. App. 198, 684 P.2d 1353 (1984); *Alpine Indus., Inc. v. Gohl,* 30 Wn. App. 750, 637 P.2d 998, 645 P.2d 737 (1981); *Barci v. Intalco Aluminum Corp.,* 11 Wn. App. 342, 522 P.2d 1159 (1974). Here, there was no such showing, and it was error to exclude evidence of the survey on this ground.

However, the court correctly excluded the survey. While violation of the discovery rules would not be a valid basis for exclusion, there was no showing the survey was trustworthy, that it reported similar accidents, or that it was of a type reasonably relied upon by experts in the field. This court may uphold the exclusion on alternate grounds. *Thomas v. French,* 99 Wn.2d 95, 659 P.2d 1097 (1983).

The judgment is affirmed.

McINTURFF, A.C.J., and THOMPSON, J., concur.

Reconsideration denied March 19, 1985.

Review denied by Supreme Court June 7, 1985.