**FILED**
**MAY 12, 2020**
**In the Office of the Clerk of Court**
**WA State Court of Appeals, Division III**

IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION THREE

| | | |
|---|---|---|
| BRIAN LAMARCHE, an individual, MELANIE LAMARCHE, an individual, and THEIR MARITAL COMMUNITY comprised thereof, | ) ) ) ) ) | No. 36606-5-III |
| Appellants, | ) ) | |
| v. | ) ) | |
| IZACK VAIL, an individual, SHAWNELL VAIL, an individual, and THEIR MARITAL COMMUNITY comprised thereof, | ) ) ) ) ) | |
| Respondents, | ) ) | UNPUBLISHED OPINION |
| JEFFREY SCHROEDER, an individual, SABRINA JONES-SCHROEDER, an individual, THEIR MARITAL COMMUNITY comprised thereof, J & S INVESTMENTS, Washington Limited Liability Company, PILLAR TO POST HOME INSPECTORS, a Florida corporation, AMANDA WHITE, an individual, JOEL ELGEE, an individual, COLDWELL BANKER SCHNEIDMILLER REALTY, an Idaho corporation, EXIT REALTY CORP. USA, a Massachusetts corporation, and LAURA BRANNING, an individual, | ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) | |
| Defendants. | ) | |

LAWRENCE-BERREY, J. — Brian and Melanie Lamarche appeal after the trial court

dismissed their breach of contract and negligent misrepresentation claims against Izack

and Shawnell Vail.  We generally affirm, but remand for the trial court to determine

whether any claims remain.

FACTS

On April 29, 2016, the Lamarches entered into a "Real Estate Purchase and Sale

Agreement" (REPSA) with the Vails.  The REPSA set forth the Lamarches' rights and

obligations as purchasers and the Vails' rights and obligations as sellers of residential

property located in Spokane, Washington.  The purchase price was $398,000, and the

sale's closing was to occur on or about June 6, 2016.

The REPSA contained addenda, including a "Spokane Addendum To Purchase

And Sale Agreement."  Clerk's Papers (CP) at 112-13.  The Spokane Addendum advises

the parties to the sale that the brokers are not in a position to offer certain types of expert

advice, including advice about the condition of the property, and encourages the parties to

seek appropriate expert advice on those matters.  It advises the buyers there may be

defects in the property, the buyers are solely responsible for determining whether to hire a

professional inspector, and determining what course to take after an inspection.  It advises

the sellers they have the sole responsibility for disclosing to buyers in writing any

2

knowledge they have regarding the presence of adverse conditions affecting the property. The Vails and the Lamarches initialed both pages of this addendum, signifying their understanding and agreement.

In accordance with chapter 64.06 RCW, the Vails provided the Lamarches with "Form 17," their "Seller Disclosure Statement." CP at 116-21. Among other things, the Vails disclosed: (1) the basement had not flooded or leaked, (2) all remodeling work included building permits and final inspections, (3) there were no defects in the foundations or sidewalks, and (4) there were no undisclosed defects that materially affect the property that a prospective buyer should know about.

The Lamarches hired a professional home inspector, Jeff Schroeder, who issued a report dated May 6, 2016. The report notes numerous minor issues and recommendations, but only one item is relevant to the present dispute. The inspector checked a box indicating the house had a poured concrete foundation.

The sale closed on or about June 6, 2016.

The Lamarches' basement flooded for one week in February 2017 and flooded again for one week in March 2017. The Lamarches soon after discovered the basement's foundation was wood, not concrete.

3

In March 2017, the Lamarches hired a second property inspector, Brent

Cornelison.  They asked him to determine the cause and origin of the water intrusion into

the basement, to evaluate the extent of the damage to the wall framing, and to provide

recommendations for repair and restoration.  In the report, Mr. Cornelison wrote:

> The wood framed basement wall is in poor condition.  We do not
> believe it is [in] imminent danger of collapse[.]  [H]owever, the framing
> will not last many more years . . . . [Because of] the *continual water
> intrusion* issues something needs to be done to remedy this issue soon.
> *There are multiple indications that water damage has occurred over many
> years in the basement.*  Rust is evident on the hangers[1] and the electrical
> outlets.  Water staining is evident on the wall framing, sill plates, and the
> concrete floors.  The sill plates are also rotten in the middle due to the
> *repeated water exposure* and enclosed cavity environment.
>     *The water intrusion issue in the basement is not new*.  This past
> winter season was a much higher than normal season for ground and surface
> water. This only made the problems in the basement more evident.  The
> permanent solution to resolving the foundation problems is raising up the
> residence and placing a new concrete basement wall under it.  The
> basement walls should be properly water sealed and protected with clean
> draining gravel and drain pipes that [slope] away from the residence.
>     Conclusions & Recommendations:
>     . . . .
>     *3.  In our professional opinion, the water damage noted to the wood
> basement walls is consistent with long term exposure to water and has been
> occurring for many years.*

---

[1] Hangers are metal clips that attach structural components together, such as a
wooden joist to a sill plate.

CP at 419 (emphasis added).  A project manager for Belfor USA Group estimated the cost of replacing the wooden foundation with a proper concrete foundation was approximately $325,000.[2]

On May 8, 2017, the Lamarches filed suit against the Vails, the Schroeders, the Schroeders' home inspection company, the real estate agents, and the real estate firms involved in the sale.  They asserted various claims against the Vails, including breach of contract and negligent misrepresentation.  With respect to breach of contract, the Lamarches referred to the REPSA and asserted the Vails failed to disclose defects in the property.  With respect to negligent misrepresentation, the Lamarches referred to the seller disclosures and asserted the Vails negligently misrepresented several aspects of the property.  The Lamarches requested damages or the alternate remedy of rescission.

The parties conducted discovery to determine the facts underlying the claims and defenses.  The Vails deposed Mr. Cornelison, the second property inspector who discovered the failing wood foundation.  Mr. Cornelison testified the basement foundation was nearing the end of its useful life.  He said the water was likely coming up

---

[2] The Lamarches attached this report to the Declaration of Ryan McNeice in opposition to summary judgment.  The Vails moved to strike the report as hearsay. Nothing in the record shows the trial court granted the Vails' motion.  To the contrary, the summary judgment order states the trial court considered Mr. McNeice's declaration. Presumably, this includes all attachments.

under the foundation and the sill plate, and the sill plate showed decay and was rotten. Mr. Cornelison conceded that if the leak was gradual enough, it could have been contained within the wall without notice. He said he believed the water intrusion had been going on for a long time—15 or 20 years.

The Vails also deposed Mr. Lamarche. Mr. Lamarche admitted he relied on his original property inspector to find property defects. He testified he also relied on the multiple listing services (MLS) listing and viewed it on a public website when the property was first placed on the market. The MLS, a three-page document, contains one page that describes the listed property. That page describes the foundation as "concrete" and that page is initialed by the Vails. CP at 377.

The Lamarches deposed Mr. Vail. Mr. Vail admitted that he, personally, did the remodel work on the upstairs bathroom and the downstairs bathroom, and did not obtain permits for either. He also conceded the dishwasher leaked in 2014 and it caused substantial flooding in the basement. He testified he hired professionals to remove the water and restore the basement—at a cost of approximately $15,000.

The Lamarches obtained an October 10, 2018 e-mail statement from the Vails' former neighbor, then traveling in Croatia and Slovenia.[3] She said Mrs. Vail told her years earlier that her dishwasher had leaked and damaged the basement, and that she and her husband had received money from their insurance company for repairs. According to the neighbor, Mrs. Vail also said her husband was pretty good at repairs and did the repairs himself, which saved money and allowed them to get some kitchen and other remodeling done.

The Lamarches' structural engineer, Craig Lee, testified it would have been difficult for the original property inspector to see the basement foundation and might have been misled because the foundation along the garage was concrete. Mr. Lee testified he had never seen a wood foundation in Spokane County. He also testified Mr. Vail probably knew the basement foundation was wood. He explained Mr. Vail had remodeled the basement bathroom, and removal and replacement of the subfloor most likely could not have been done without noticing the wood foundation.

On September 27, 2018, the Vails moved for partial summary judgment. Their motion asserted that "no issues of material fact exist regarding Plaintiffs claims for breach

---

[3] The Vails moved to strike the unsworn e-mail. The trial court did not rule on their motion. It instead considered the statement as well as all evidence attached to Mr. McNeice's declaration. Nevertheless, the unsworn e-mail is not material to our decision.

of contract and negligent misrepresentation" and asked that the court "rul[e] as a matter of law that Plaintiffs' cause of action for breach of contract and negligent misrepresentation should be dismissed with prejudice." CP at 80-81. However, their supporting memorandum included a "Relief Requested" that the court "enter a summary judgment order dismissing plaintiffs' breach of contract cause of action and plaintiffs' negligent misrepresentation cause of action *with respect to issues involving the foundation of the house*." CP at 87 (emphasis added). Throughout their argument, they focused only on the MLS listing that described the foundation as concrete. In their conclusion section of their summary judgment memorandum, they reiterated their "request that this court dismiss Plaintiffs' cause of action for breach of contract, and their cause of action for negligent misrepresentation *regarding the foundation*." CP at 91 (emphasis added).

The Lamarches responded and argued there were genuine issues of material fact with respect to their breach of contract claim and several aspects of their negligent misrepresentation claim—including the wood foundation, the prior basement flooding, and the lack of permits. The Vails' reply took issue with the Lamarches' broad response, arguing that "alleged representations that have nothing to do with the foundation of the home" are "irrelevant." CP at 433. The reply again focused on the MLS listing.

Prior to the summary judgment hearing, the Lamarches entered stipulated dismissals of their claims against the real estate agents and their firms, and agreed to pursue arbitration with their home inspector. They also stipulated to dismissing their intentional misrepresentation and fraud claims against the Vails.

The court heard arguments at the summary judgment hearing and, with respect to the negligent misrepresentation claim, remarked:

> What has been argued by the plaintiffs is that the MLS listing, which indicated that the foundation was concrete, is a sufficient basis, coupled with the other false statements made on Form 17, to show that false information was provided by the defendant. They seem to imply . . . that the defendant knew there was a wood foundation, and that the wood foundation caused the basement flooding. . . . I don't believe Plaintiffs have shown reliance. I think there's some confusion as to whether the defendant Vails were responsible for that MLS listing. Obviously, it's out there on their behalf, but whether they were aware that the basement was wood and made a misrepresentation is argu[able]. I don't come to that conclusion . . . . No evidence was presented that defendants knew their foundation was wood at the time of sale.

CP at 534-35.

The trial court granted the Vails' motion. The Vails handed up a prepared order for signature. The order stated the Vails' summary judgment motion was granted and dismissed the Lamarches' causes of action for breach of contract and negligent misrepresentation claims. The order did not limit the dismissed negligent

9

misrepresentation claim to the wood foundation. The Lamarches' attorney approved the order as to form.

The Lamarches filed a motion for reconsideration, taking issue with both the dismissed breach of contract claim and the dismissed negligent misrepresentation claim. The trial court denied their motion, and the Lamarches timely appealed to this court.[4]

ANALYSIS

On review of a summary judgment order, we engage in the same inquiry as the trial court. *Wash. State Major League Baseball Stadium Pub. Facilities Dist. v. Huber, Hunt & Nichols-Kiewit Constr. Co.*, 165 Wn.2d 679, 685, 202 P.3d 924 (2009). All facts and reasonable inferences are considered in a light most favorable to the nonmoving party. *Berger v. Sonneland*, 144 Wn.2d 91, 102-03, 26 P.3d 257 (2001). Summary judgment is appropriate only when there are no disputed issues of material fact and the prevailing party is entitled to judgment as a matter of law. CR 56(c). A fact is material when the outcome of the litigation depends on it, in whole or in part. *Atherton Condo. Apt.-Owners Ass'n Bd. of Dirs. v. Blume Dev. Co.*, 115 Wn.2d 506, 516, 799 P.2d 250

---

[4] The trial court later entered an amended order granting the Vails' motion for partial summary judgment. This amended order differed from the previous order in three respects: (1) it noted that the trial court reviewed all reconsideration pleadings, (2) it included language denying the Lamarches' motion for reconsideration, and (3) it dismissed the Lamarches' rescission action.

(1990). Summary judgment is appropriate if reasonable persons could reach but one conclusion from all the evidence. *SentinelC3, Inc. v. Hunt*, 181 Wn.2d 127, 140, 331 P.3d 40 (2014).

A.    BREACH OF CONTRACT

The Lamarches contend the trial court erred by summarily dismissing their breach of contract claim. We disagree.

To establish a claim for breach of contract, the Lamarches must show a valid agreement existed between the parties that imposes a duty, the duty was breached, and the breach proximately caused damage to the Lamarches. *See Univ. of Wash. v. Gov't Emps. Ins. Co.*, 200 Wn. App. 455, 467, 404 P.3d 559 (2017); *Nw. Indep. Forest Mfrs. v. Dep't of Labor & Indus.*, 78 Wn. App. 707, 712-13, 899 P.2d 6 (1995).

The Lamarches argue the Spokane Addendum gives rise to contractual liability. They focus on language in the addendum, which states: "Seller acknowledges that Seller has the sole responsibility for disclosing to Buyer in writing any knowledge Seller has regarding the presence of adverse conditions affecting the Property . . . ." CP at 113.

We do not construe the quoted language as imposing any new duty on a seller. Instead, it is an acknowledgement by the seller of an already existing duty.

11

The Lamarches, citing *Griffith v. Centex Real Estate Corp.*, 93 Wn. App. 202, 215, 969 P.2d 486 (1998), argue the existing duty is the general duty in real estate transactions to disclose material defects. *See also McRae v. Bolstad*, 101 Wn.2d 161, 162-65, 676 P.2d 496 (1984). We disagree that the Spokane Addendum references that general duty. The addendum references a duty by the seller to disclose adverse conditions *in writing*. This duty to disclose *in writing* is not a duty discussed in *Griffith* or *McRae*. We construe the addendum as referring to the seller's obligations under chapter 64.06 RCW, to provide the buyer a written Seller Disclosure Statement.

But the Seller Disclosure Statement, Form 17, does not give rise to contractual liability. Form 17 conspicuously states:

> THE FOLLOWING ARE DISCLOSURES MADE BY SELLER AND ARE NOT THE REPRESENTATIONS OF ANY REAL ESTATE LICENSEE OR OTHER PARTY. THIS INFORMATION IS FOR DISCLOSURE ONLY AND IS NOT INTENDED TO BE A PART OF ANY WRITTEN AGREEMENT BETWEEN BUYER AND SELLER.

CP at 116. This language comes directly from the statutory form. In addition, RCW 64.06.020(3) provides in relevant part: "The seller disclosure statement shall be for disclosure only, and shall not be considered part of any written agreement between the buyer and seller . . . ." We conclude the trial court did not err by summarily dismissing the Lamarches' breach of contract claim.

B.    NEGLIGENT MISREPRESENTATION

The Lamarches contend the trial court erred when it dismissed their claim for negligent misrepresentation.  A majority of this panel disagrees.

To establish a claim for negligent misrepresentation, the Lamarches were required to show by clear, cogent, and convincing evidence: (1) the Vails provided false information, (2) the Vails knew or should have known the information was to be used to guide the Lamarches, (3) the Vails were negligent in obtaining or communicating the false information, (4) the Lamarches relied on the false information, (5) the Lamarches' reliance was reasonable, and (6) the false information proximately caused the Lamarches' damages.  *Ross v. Kirner*, 162 Wn.2d 493, 499, 172 P.3d 701 (2007); *Austin v. Ettl*, 171 Wn. App. 82, 88, 286 P.3d 85 (2012).

We analyze the Lamarches' arguments in three parts.  With regard to the first part, relating to the MLS listing, we agree the trial court properly dismissed that subclaim.  The second part, relating to basement flooding, a majority of this panel agrees the trial court properly dismissed that subclaim.  The third part, all other subclaims, we remand.

1.    Representation in MLS listing of concrete foundation

The Lamarches presented insufficient evidence of the third element.  Although Mr. Vail denied knowing that the home had a wooden foundation, he admitted he remodeled

the basement bathroom. The Lamarches' engineer believed Mr. Vail probably could not have remodeled the basement bathroom without seeing the wooden foundation. But when questioned during his deposition, the engineer conceded it was possible for someone not too familiar with construction to have mistaken the wood foundation for furring (used for leveling). The record does not describe Mr. Vail's familiarity with construction. Even viewing the engineer's testimony in the light most favorable to the Lamarches, we are, thus, left to speculate whether Mr. Vail actually knew the foundation was wood. The Lamarches' expert had never seen a wood foundation. Mr. Vail likely never had either and may not have understood what he saw was a wood foundation rather than wood furring. Because Mr. Vail may have reasonably not known the foundation was wood, a trier of fact could not find by clear, cogent, and convincing evidence the Vails negligently communicated the foundation was concrete.

### 2. Representation that basement had not flooded or leaked

As a preliminary matter, we note that a court errs in deciding issues on summary judgment that were not raised in the summary judgment motion. *R.D. Merrill Co. v. Pollution Control Hr'gs Bd.*, 137 Wn.2d 118, 146, 969 P.2d 458 (1999). Here, the Vails moved the court to dismiss the negligent misrepresentation claim but elsewhere asked the trial court to dismiss "plaintiffs' negligent misrepresentation cause of action with respect

14

to issues involving the foundation of the house." CP at 87. A majority of this panel

believes the Vails' summary judgment motion encompassed every alleged

misrepresentation on which the Lamarches claim to have relied in closing the purchase

without the further inspection or investigation they contend would have revealed the

failing foundation—including whether the Vails negligently misrepresented the basement

had not flooded or leaked.[5]

Substantively, a majority of this panel believes the evidence was insufficient for a

trier of fact to find by clear, cogent, and convincing evidence that the Vails negligently

and falsely answered "no" when asked by the disclosure form, "Have there been any

flooding, standing water, or drainage problems on the property that affect the property or

the access to the property?" CP at 119. The Lamarches' second property inspector

believed water had been intruding into the basement for a long time—15 or 20 years.

However, in early 2017, the ground water was much higher than normal. It was during

this time the Lamarches experienced basement flooding twice.

The Vails owned the house between 2010 and June 2016. In the view of the

majority of the panel, the Lamarches failed to present clear, cogent, and convincing

---

[5] This author disagrees and notes prior flooding or leaks were not discussed in the Vails' opening summary judgment brief.

evidence that during the six years the Vails owned the home, they experienced flooding

problems affecting the property that should have been disclosed.  For this reason, a

majority affirms the trial court's dismissal of this component of the Lamarches' negligent

misrepresentation claim.[6]

### 3.    Other representations

The Vails' statement in their summary judgment memorandum that they were

seeking an order dismissing the negligent misrepresentation claim "with respect to issues

involving the foundation of the house" has proved confusing to the panel.  Again, insofar

as the Lamarches allege that a misrepresentation on any matter proximately caused them

to purchase the home without a further investigation or inspection that would have

revealed the failing foundation, a majority of the panel affirms summary judgment

dismissal of that claim.  If there *are* any remaining negligent misrepresentation claims,

---

[6] This author believes the existing record is sufficient for a trier of fact to find by clear, cogent, and convincing evidence the Vails had experienced basement flooding.  In his report, the Lamarches' expert described the water intrusion as "continual."  CP at 419. He also noted:

> There are multiple indications that water damage has occurred over many years in the basement. . . .  The water intrusion issue in the basement is not new. This past winter season was a much higher than normal season for ground and surface water.  This only made the problems in the basement *more* evident.

CP at 419 (emphasis added).  A reasonable inference is that the basement flooding occurred continuously and repeatedly, and was evident even in the absence of much higher than normal ground water.

No. 36606-5-III
*Lamarche v. Vail*

they are minor and would not support a claim for rescission. We remand for the trial

court to determine, with the parties' input, what other claims remain, if any.

Affirmed in part and remanded.

A majority of the panel has determined this opinion will not be printed in the

Washington Appellate Reports, but it will be filed for public record pursuant to

RCW 2.06.040.

_____
Lawrence-Berrey, J.

WE CONCUR:

_____     _____
Korsmo, A.C.J.                      Siddoway, J.

17